NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK BERRADA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GADI COHEN and PNY TECHNOLOGIES, INC.,<br><br>　　　　Defendants. | Case No. 16-cv-574 (SDW) (LDW)<br><br>**OPINION**<br><br>September 26, 2018 |

**WIGENTON**, District Judge.

Before this Court are Defendants Gadi Cohen ("Cohen") and PNY Technologies, Inc.'s ("PNY") (collectively "Defendants") Motion for Summary Judgment, brought pursuant to Federal Rule of Civil Procedure ("Rule") 56, and Plaintiff Mark Berrada's ("Plaintiff") Cross Motion to Strike Portions of Defendants' Moving Papers. This Court has jurisdiction over this action pursuant to 28 U.S.C §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. The motions are decided without oral argument pursuant to Rule 78. For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**, and Plaintiff's Cross Motion to Strike Portions of Defendants' Moving Papers is **DENIED as moot**.

**I.　　BACKGROUND AND PROCEDURAL HISTORY**

Defendant Cohen is the founder of Defendant PNY[1], a technology company that sells computer peripherals and electronics accessory products. Cohen is a resident of New Jersey, and

---

[1] Cohen has also served as the company's Chairman of the Board of Directors, President, and Chief Executive Officer.

PNY's principal place of business is in Parsippany, New Jersey. Plaintiff is a resident of Florida who claims to have "specialized experience and expertise . . . in [] product development and design, product packaging, manufacturing, global sourcing, supply chain, purchasing, merchandising, marketing, sales, and distribution of computer peripherals and electronics accessory products[.]" (Defs.' Statement of Material Facts ("SMF") ¶¶ 5-6, ECF No. 270-1.) "In or around August 2013, [Plaintiff] and . . . [Defendant] Cohen had discussions about [Plaintiff] potentially providing services to PNY." (*Id.* ¶ 24.) In September 2013, Plaintiff executed PNY's Mutual Confidentiality and Non-Disclosure Agreement, and shortly thereafter began working with or for Defendants. (Richter Decl. Ex. 13, ECF No. 270-9; *see also* Am. Compl. ¶ 13, ECF No. 187)

Plaintiff alleges that he entered into two contracts with Defendants, an oral one in September 2013 (the "2013 Contract") and a written one in July 2014 (the "2014 Contract"). (Am. Compl. ¶¶ 12-13, 17.) Plaintiff avers that under the 2013 Contract, he was promised:

> (i) 5% of the worldwide gross sales of all accessories (including shredders) including existing products and new products that were managed, sourced, developed, managed designed, marketed and/or sold by [Plaintiff] or under his leadership (but excluding non-shredder Hewlett Packard branded accessories) for as long as those existing and new products are sold; (ii) 25% of the gross profit from the worldwide sales of such existing and new products for so long as they are sold; (iii) $15,000.00 per month for twelve months to cover [Plaintiff's] base living and other expenses; and (iv) [Plaintiff's] travel expenses while on PNY business[.]

(*Id.* ¶ 12.) Under the 2014 Contract, "as a reward for [his] performance," Plaintiff was promoted to vice president at PNY and allegedly promised additional compensation consisting of: "(a) .5% of sales to existing customers of PNY's products; (b) 1% on sales to new customers of PNY's products; (c) [an] annual base salary of $120,000.00; and (d) fringe benefits, including medical, dental, vision, and life insurance, participation in PNY's 401(k) plan, and paid time off." (*Id.* ¶ 17.) Ultimately, PNY paid Plaintiff $15,000.00 a month for services rendered between October

2013 and October 15, 2014, and reimbursed his travel expenses. Plaintiff did not receive any percentage payments under the 2013 Contract or any of the compensation or benefits under the 2014 Contract.

On September 10, 2015, Plaintiff filed suit against Defendants in state court in Florida, alleging that Defendants failed to fully compensate him for services he provided to PNY. (ECF No. 1-2.) On October 13, 2015, Defendants removed the action to the United States District Court for the Southern District of Florida. (ECF No. 1.) On February 2, 2016, the case was transferred to the District Court for the District of New Jersey. (ECF Nos. 33, 88.) The parties subsequently amended their respective pleadings.[2] (ECF Nos. 187, 190.) The following claims are included in Plaintiff's eleven-count Amended Complaint: fraud (Count One), breach of 2013 Contract (Count Two), unjust enrichment as to 2013 Contract (Count Three), breach of 2014 Contract (Count Four), promissory estoppel (Count Five), unjust enrichment as to 2014 Contract (Count Six), quantum meruit (Count Seven), violations of New Jersey Wage Payment Act[3] (Count Eight), violations of the Fair Labor Standards Act ("FLSA") (Count Nine), violations of the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a1, *et seq*. (Count Ten), and violations of the New Jersey Independent Sales Representative Act, N.J. Stat. Ann. § 2A:61A-1, *et seq*.[4] (Count Eleven). (*See generally* Am. Compl.) Defendants asserted the following counterclaims with their Answer to the Amended Complaint: breach of oral contract (Counterclaim One), breach of implied covenant of good faith and fair dealing (Counterclaim Two), promissory estoppel (Counterclaim

---

[2] The parties have undergone protracted litigation over amendments to Plaintiff's Complaint and Defendants' Counterclaims. (*See* April 17, 2018 Letter Opinion and Order, ECF Nos. 287-88.) This Court assumes the parties' familiarity with the procedural history in this matter and thus will summarize only those facts relevant to the instant motion.
[3] For purposes of this Opinion, this Court will refer to N.J. Stat. Ann. § 34:11-4.1, *et seq*. as the New Jersey Wage Payment Law ("NJWPL").
[4] For purposes of this Opinion, this Court will refer to N.J. Stat. Ann. § 2A:61A-1, *et seq*. as the New Jersey Sales Representatives' Rights Act ("NJSRRA").

Three), unjust enrichment (Counterclaim Four), fraudulent misrepresentation (Counterclaim Five), negligent misrepresentation (Counterclaim Six), violations of the New Jersey Trade Secrets Act ("NJTSA"), N.J. Stat. Ann. § 56:15-1, *et seq.* (Counterclaim Seven), violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.* (Counterclaim Eight), violations of New Jersey's Computer Related Offenses Act ("NJCROA"), N.J. Stat. Ann. § 2A:38A-3, *et seq.* (Counterclaim Nine), breach of contract: violation of the Confidentiality and Non-disclosure Agreement (Counterclaim Ten), and conversion (Counterclaim Eleven). (ECF No. 190.)

On March 20, 2018, Defendants filed the instant Motion for Summary Judgment. (ECF Nos. 269-71.) On April 30, 2018, Plaintiff opposed and cross-moved to strike portions of Defendants' moving papers. (ECF Nos. 290-91.) On May 23, 2018, Defendants opposed Plaintiff's cross motion and replied in further support of their summary judgment motion. (ECF No. 296.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing Fed. R. Civ. P. 56(e)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

## III. DISCUSSION

   a. <u>Fraud (Count One)</u>

Under New Jersey law, to establish a claim for fraud a plaintiff must allege: "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997)); *see also Churchill Downs, Inc. v. NLR Entm't, LLC*, No. 14-3342, 2017 WL 899927, at *11 (D.N.J. Mar. 6, 2017). In the context of fraudulent inducement, the first element may be satisfied if the promisor knows at the time he makes the promise that he has no intention of fulfilling it. *Luscko v. S. Container Corp.*, 408 F. App'x 631, 634 (3d Cir. 2010) (citations omitted); *Re: Refine Tech., LLC v. MCC Dev., Inc.*, No. 17-5548, 2018 WL 3159874, at *3 (D.N.J. Feb. 21, 2018). A promisor's intent can be gleaned from circumstantial evidence, such as

> utter recklessness and implausibility of the statement in light of subsequent acts and events, a showing that the promisor's intention to perform was dependent upon contingencies only known to him, or evidence showing at the time of the promise that the promisor could not or would not fulfill the promise.

*Luscko*, 408 F. App'x at 634-35 (citing *Ocean Cape Hotel Corp. v. Masefield Corp.*, 164 A.2d 607, 613 (N.J. Super. Ct. App. Div. 1960)). However, "[m]ere nonperformance of a promise is insufficient to show that a promisor had the requisite intent not to perform." *Id.* at 635 (citing *Notch View Assocs. v. Smith*, 615 A.2d 676, 682 (N.J. Super. Ct. Law Div. 1992)).

Here, Plaintiff alleges that Defendants "made numerous misrepresentations . . . to induce [Plaintiff] to join PNY, either knowing they were false or in reckless disregard as to whether they were false[.]" (Am. Compl. ¶ 21.) Notwithstanding the parties' disputes as to what promises Defendants made, Plaintiff has not presented any evidence to suggest that Defendants did not

6

intend to fulfill those promises. Additionally, "statements that can be categorized as 'puffery' or 'vague and ill defined opinions' are not assurances of fact and thus do not constitute misrepresentations." *Fimbel v. Fimbel Door Corp.*, No. 14-1915, 2014 WL 6992004, at *4 (D.N.J. Dec. 10, 2014) (quoting *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998)). Thus, allegations that Plaintiff was promised that he "would make more money working for [Defendants] in the long run . . . because they were entering into a long-term agreement[,]" (Am. Compl. ¶ 21), are inactionable because they were opinions of future events rather than misrepresentations of fact.

Moreover, under the economic loss doctrine, a plaintiff is prohibited from "recovering in tort economic losses to which [his] entitlement only flows from contract." *Turbulent Diffusion Tech. Inc. v. Amec Foster Wheeler N. Am. Corp.*, No. 15-7105, 2017 WL 1752951, at *2 (D.N.J. May 4, 2017) (internal quotation marks omitted) (quoting *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002)). Here, Plaintiff's fraud claim alleges, in part, that he was promised certain percentage payments under the 2013 Contract, and that he reasonably relied on those representations "to his detriment, by . . . remaining employed by Defendants[.]" (Am. Compl. ¶¶ 21-22.) The economic loss doctrine bars Plaintiff's fraud claim to the extent that it is not separate and distinct from his claim that Defendants breached the 2013 Contract. For all the foregoing reasons, Defendants' motion is granted as to Plaintiff's fraud claim under Count One.

### b. Breach of Contract (Counts Two and Four)

To state a claim for breach of contract in New Jersey, Plaintiff must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico*, 507 F.3d at 203.

### i. 2013 Contract

Here, the parties dispute whether the 2013 Contract included confidential percentage payments of PNY's worldwide sales and profits. (Pl.'s Statement of Disputed Material Facts ("Pl.'s Disputed Facts") ¶ 18, ECF No. 291-2.) This Court notes that over the course of litigation, Plaintiff has modified the terms of the 2013 Contract as they relate to the percentage payments. The Complaint initially alleged that he was entitled to: "5% of the sales proceeds of Accessories including new products that were sourced, developed and/or managed by [Plaintiff] (but excluding Hewlett Packard brand accessories); [and] 25% of the gross profit from the worldwide sales of such products[.]" (Compl. ¶ 13, ECF No. 1-2.) The terms were expanded in the Amended Complaint to:

> 5% of the *worldwide gross sales* of all accessories *(including shredders) including existing products* and new products that were managed, sourced, developed, managed [sic] designed, marketed and/or sold by [Plaintiff] *or under his leadership (but excluding non-shredder Hewlett Packard branded accessories) for as long as those existing and new products are sold*; [and] 25% of the gross profit from the worldwide sales of such *existing and new products for so long as they are sold*[.]

(Am. Compl. ¶ 12 (emphasis added).)

Other than Plaintiff's self-serving testimony, there is no evidence that the percentage payments were part of the 2013 Contract.[5] *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("As a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)); *see, e.g.*, *Soto v. Trella*, No. 03-1098, 2007 WL 4355463, at *2 (D.N.J. Dec. 10, 2007) (awarding summary judgment to defendants where

---
[5] Plaintiff's allegation that Cohen made personal assurances that he would compensate Plaintiff if PNY failed to do so suffers from the same deficiency.

8

there was no "eyewitness account, corroborating documentation or other supporting evidence" and the plaintiff had "only his own self-serving testimony").

"[T]he summary judgment standard does not denote what a fact-finder may find upon delusion, but rather what a *reasonable* fact-finder could conclude from the evidence presented." *Mumtaz v. Etihad Airways & Airlines*, No. 12-2051, 2014 WL 7405216, at *5 (D.N.J. Dec. 30, 2014). "To allow unreasonable inferences to be drawn from Plaintiff, this Court would be drastically limiting the possibility that summary judgment could ever be granted because virtually any contrary testimony by a plaintiff would preclude a grant of summary judgment to the defendants." *Id.* at *6 (citing *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999)). Although this Court gives the nonmoving party the benefit of all *reasonable* inferences in deciding a summary judgment motion, here, Plaintiff is asking this Court to make unreasonable inferences regarding the 2013 Contract. Because Plaintiff is unable to establish that Defendants agreed to issue the alleged percentage payments as part of the 2013 Contract, Defendants' motion is granted as to the breach of contract claim in Count Two.

    ii. *2014 Contract*

As discussed above, to maintain a breach of contract claim, Plaintiff must be able to establish that there was a contract. "[A] contract arises from offer and acceptance, and must be sufficiently definite so that the performance to be rendered by each party can be ascertained with reasonable certainty." *Lacroce v. M. Fortuna Roofing, Inc.*, No. 14-7329, 2017 WL 431768, at *5 (D.N.J. Jan. 31, 2017) (citing *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004)); *see also Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 98 (3d Cir. 2011). As such, courts require "a 'meeting of the minds,' as evidenced by each side's express agreement to every term of the contract." *State v. Ernst & Young, L.L.P.*, 902 A.2d 338, 345 (N.J. Super. Ct. App. Div. 2006) (citation omitted); *see Newfield Fire Co. No. 1 v. Borough of Newfield*, 107 A.3d 686, 693 (N.J. Super. Ct. App. Div.

9

2015) (same). "Where the parties do not agree to one or more essential terms, . . . courts generally hold that the agreement is unenforceable." *Weichert Co. Realtors*, 608 A.2d at 284.

Here, Plaintiff received a formal, written offer of employment on July 16, 2014. (Defs.' SMF ¶¶ 94-95; Pl.'s Resp. to Defs.' SMF ¶¶ 94-95, ECF No. 291-1.) Plaintiff alleges that on the very same day, he crossed out certain terms from the 2014 Contract and returned a signed copy to PNY's Director of Human Resources. (Pl.'s Resp. to Defs.' SMF ¶ 97; *but see* Defs.' SMF ¶ 96.) Specifically, Plaintiff avers that he struck the following provisions from the 2014 Contract:

> Commissions can be reviewed and changed as deemed necessary by PNY. . . . This letter contains all of the terms of the offer of employment given to you by PNY . . . and supersedes any other representations or offers made to you in connection with your employment. Nothing in this letter shall be construed as a contract of employment or a promise of employment for any particular length of time. In accordance with PNY's policy, your employment relationship with PNY Technologies, Inc. shall be employment at will. This means that you are free to resign or leave employment at any time for any reason. Likewise, your employment may be terminated by PNY at any time, with or without notice, for any reason.

(Nirenberg Decl. Ex. U at 1-2, ECF No. 291-25.) Though Defendants dispute whether Plaintiff returned the 2014 Contract in this manner, assuming Plaintiff's factual allegations to be true, when he crossed out the above terms, he was rejecting PNY's offer and making a counteroffer. *See Kamden v. Lieblich*, No. L-9310-03, 2005 WL 2806227, at *3 (N.J. Super. Ct. App. Div. Oct. 28, 2005) ("It is an elementary tenet of contract law that an offeree's counteroffer serves as a rejection of the original offer[.]").[6] Because the offer set forth in the 2014 Contract was not met with valid

---

[6] Plaintiff's argument that the 2014 Contract is enforceable because he only struck immaterial terms from the offer is not persuasive. (*See* Pl.'s Br. at 14, ECF No. 291.) The language Plaintiff removed from the contract concerns the very same issues being litigated in this case, such as whether the compensation outlined in the 2014 Contract would supplement or supersede the 2013 Contract. Thus, even viewing the facts in the light most favorable to Plaintiff, this Court "cannot find a contract that is distinct and definitive enough to be enforceable." *Baer*, 392 F.3d at 621.

acceptance, there could be no resultant breach. Therefore, Defendants' motion is granted as to Plaintiff's breach of contract claim under Count Four.

        c. <u>Quasi-Contract Claims (Counts Three, Five, Six, and Seven)</u>

Under New Jersey law, "[q]uasi-contract liability will not be imposed . . . if an express contract exists concerning the identical subject matter. The parties are bound by their agreement, and there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties." *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983); *see also Freightmaster USA, LLC v. Fedex, Inc.*, No. 14-3229, 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015). Here, in the alternative to his breach of contract claims, Plaintiff has pled quasi-contract theories of relief (i.e., unjust enrichment, promissory estoppel, and quantum meruit). However, because the 2013 Contract is a valid oral agreement that squarely addresses Plaintiff's compensation during the relevant time period, including in 2014, this Court need not reach Plaintiff's quasi-contract claims. *See, e.g.*, *Hillsborough Rare Coins, LLC v. ADT LLC*, No. 16-916, 2017 WL 1731695, at *6 (D.N.J. May 2, 2017) (explaining that relief under the quasi-contract theories of unjust enrichment and promissory estoppel are not available when a valid contract exists); *N.Y.-Conn. Dev. Corp. v. Blinds-To-Go (U.S.) Inc.*, 159 A.3d 892, 901-02 (N.J. Super. Ct. App. Div. 2017) (explaining that once a jury finds that there was an enforceable contract, the plaintiff would not have been entitled to recover damages under the quasi-contract theory of quantum meruit). Therefore, Plaintiff's quasi-contract claims in Counts Three, Five, Six, and Seven are dismissed as moot.

        d. <u>Wage Claims (Counts Eight, Nine, Ten, Eleven)</u>

           i. *NJWPL & NJSRRA*

The NJWPL "is designed to protect an employee's wages and to assure timely and predictable payment." *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 463 (N.J. 2015); *see also* N.J.

Stat. Ann. § 34:11-4.2 (addressing time and mode of payment, and paydays). Analogously, the NJSRRA requires principals to pay their sales representatives any earned commissions and compensation within thirty days of the termination of a contractual relationship or thirty days of the date commissions are due. N.J. Stat. Ann. § 2A:61A-2. Plaintiff alleges that he is owed wages under the NJWPL, or alternatively, commissions under the NJSRRA. In sum, Plaintiff is seeking the percentage payments under the 2013 and 2014 Contracts, and his $120,000.00 base salary under the 2014 Contract. As discussed above, there is no evidence to suggest that percentage payments were part of the 2013 Contract or that the parties consummated the 2014 Contract. Therefore, Defendants' motion is granted as to Plaintiff's NJWPL and NJSRRA claims in Counts Eight and Eleven.

### ii. FLSA & NJWHL

The FLSA established *inter alia* overtime requirements for employees in furtherance of Congress's objectives to eliminate "conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers[.]" 29 U.S.C. § 202; 29 U.S.C. § 207 (requiring employers to pay employees that work more than forty hours per week "a rate not less than one and one-half times the regular rate at which he is employed"). The NJWHL established a similar statutory scheme in New Jersey. N.J. Stat. Ann. § 34:11-56a4 (addressing minimum rates, overtime rates, and exceptions thereto). However, these federal and state provisions do not apply to highly-compensated employees: (1) who receive a "total annual compensation of at least the annualized earnings amount of the 90th percentile of full-time nonhourly workers nationally;"[7] and (2) who "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive, administrative or professional

---

[7] As of December 1, 2016, the exemption applies to employees that receive "total annual compensation of at least $134,004." 29 C.F.R. § 541.601(b).

employee[.]"[8] 29 C.F.R. § 541.601(a); *see also* N.J. Admin. Code § 12:56-7.2(a) (adopting by reference federal provisions under 29 C.F.R. Part 541). Exemptions to the FLSA or NJWHL are "narrowly construed against the employer, and the employer has the burden of establishing an exemption." *Pignataro v. Port Auth.*, 593 F.3d 265, 268 (3d Cir. 2010); *see also In re Raymour & Flanigan Furniture*, 964 A.2d 830, 836 (N.J. Super. Ct. App. Div. 2009) (citations omitted).

Here, Plaintiff alleges that he was entitled to, but failed to receive, overtime wages as required under the FLSA and NJWHL. Even assuming that Plaintiff was an employee rather than an independent contractor, the undisputed facts demonstrate that he was exempt from receiving overtime wages as a highly-compensated executive.[9] He satisfies the first prong of the exemption because he was paid $15,000.00 per month, which equates to $180,000.00 per year. (Defs.' SMF ¶ 38.) With regard to the second prong, the FLSA's regulations define executives in part as those employees "[w]ho customarily and regularly direct[] the work of two or more other employees[.]" 29 C.F.R. § 541.100(a)(3). While working for PNY, Plaintiff headed a team of at least four individuals. (Defs.' SMF ¶ 79.) Plaintiff's high compensation and performance of "any one or more of the exempt duties or responsibilities of an executive" is sufficient to classify him as a highly-compensated executive employee who is exempt from overtime pay. *See* 29 C.F.R. § 541.601(c) (explaining that "[a] high level of compensation is a strong indicator of an employee's

---

[8] The exemption only applies to an employee whose "primary dut[ies] include[] performing office or non-manual work." 29 C.F.R. § 541.601(d). It is undisputed that Plaintiff's duties involved office or non-manual work.

[9] Defendants admit that they did not plead this exemption as an affirmative defense. (Defs.' Reply Br. at 7, ECF No. 296.) However, as courts have explained, "the technical failure to plead an FLSA exemption defense explicitly in the pleadings is not fatal to the employer's ability to assert it in the litigation and have the Court reach the merits of the defense." *Antiskay v. Contemporary Graphics & Bindery Inc.*, No. 11-7579, 2013 WL 6858950, at *5-6 (D.N.J. Dec. 26, 2013). This is particularly the case where the plaintiff does not suffer from surprise or undue prejudice. *See id.* at *5 (citing *In re Sterten*, 546 F.3d 278, 285 (3d Cir. 2008)). Here, Defendants have repeatedly indicated their position during the discovery phase that Plaintiff was a consultant rather than an employee of PNY under the FLSA and NJWHL, and that even if he was an employee, he was exempt from overtime wages. (*See* Richter Decl. Ex. 9 at ¶¶ 18-19, ECF No. 270-5; Richter Decl. Ex. 72 at ¶¶ 87, 90-93, ECF No. 269-28; Richter Suppl. Decl. Exs. 95-100, ECF Nos. 296-8 to -13.) As such, this Court finds that the exemption defense was not waived, and Defendants' Answer is deemed amended to include such a defense.

exempt status, thus eliminating the need for a detailed analysis of the employee's job duties"). Based on the foregoing, Defendants' motion is granted as to Plaintiff's FLSA and NJWHL claims in Counts Nine and Ten.

    e. <u>Defendants' Counterclaims</u>

        i. *2013 Contract (Counterclaims One, Two, Three, and Four)*

As discussed above, the terms of the 2013 Contract were never reduced to writing and are heavily disputed. In contrast to the dispute over percentage payments, the parties have created genuine issues of material fact as to the scope of Plaintiff's duties and responsibilities under the 2013 Contract and the sufficiency of his efforts to develop, market, and sell products for PNY. *See Interlink Grp. Corp. USA, Inc. v. Am. Trade & Fin. Corp.*, No. 12-6179, 2014 WL 3578748, at *9 (D.N.J. July 18, 2014) ("[E]ven if the parties had agreed on a basic type of employment, in most circumstances the reasonableness of Defendants' conduct is . . . a question of fact[.]"). Without knowing the precise terms of their agreement, this Court cannot assess whether Plaintiff fulfilled his obligations when he introduced at least one shredder manufacturer to Defendants. (*See* Pl.'s Resp. to Defs.' SMF ¶ 70.) Therefore, summary judgment is denied as to Defendants' counterclaims that Plaintiff breached the 2013 Contract (Counterclaim One), that he violated the implied covenant of good faith and fair dealing in relation to the contract (Counterclaim Two), and that he is alternatively liable under the quasi-contract theories of promissory estoppel and unjust enrichment (Counterclaims Three and Four).

        ii. *Fraudulent and Negligent Misrepresentation (Counterclaims Five and Six)*

"Under New Jersey law, the elements required to establish . . . common law fraud, fraudulent misrepresentation, and fraudulent inducement are identical[.]" *Greenskies Renewable Energy, LLC v. Arch Ins. Co.*, No. 16-5243, 2017 WL 4023287, at *4 (D.N.J. Sept. 13, 2017)

14

(citations omitted). Similarly, to successfully assert a claim of negligent misrepresentation, Defendants must demonstrate that Plaintiff "negligently made an incorrect statement of a past or existing fact, that . . . [Defendants] justifiably relied on it and that [their] reliance caused a loss or injury." *Masone v. Levine*, 887 A.2d 1191, 1195 (N.J. Super. Ct. App. Div. 2005). In the instant matter, there are questions of fact as to whether Plaintiff made any material misrepresentations or incorrect statements that would have induced Defendants to enter into the 2013 Contract. Therefore, summary judgment is denied as to Defendants' counterclaims of fraudulent misrepresentation (Counterclaim Five) and negligent misrepresentation (Counterclaim Six).

> iii. *Violations of NJTSA, CFAA, and NJCROA; Breach of Confidentiality and Non-Disclosure Agreement; and Conversion (Counterclaims Seven through Eleven)*

Defendants' remaining counterclaims relate to Plaintiff's actions in forwarding his PNY e-mails to his personal e-mail account and downloading them to a USB drive. (Defs.' SMF ¶¶ 161-71.) Summary judgment is not appropriate at this time because there are issues of fact as to whether Plaintiff improperly acquired his PNY e-mails. (*Compare id.* ¶ 166 *with* Pl.'s Resp. to Defs.' SMF ¶ 166.) Furthermore, Defendants admittedly "do not know if [Plaintiff] saved the PNY emails and information he downloaded, if he sent it to competitors, or if he used it for his business purposes or any other reason." (Defs.' SMF ¶ 183.) Their inability to ascertain this information is in part because Plaintiff has since disposed of his personal laptop and cellular phone. (*Id.* ¶¶ 179, 180, 182.)[10] Thus, summary judgment is denied as to Defendants' counterclaims that Plaintiff violated the NJTSA, CFAA, and NJCROA (Counterclaims Seven, Eight, and Nine),

---

[10] Although Plaintiff's actions are not proof of wrongdoing, Defendants may request an adverse-inference jury instruction at trial. *See, e.g.*, *Durst v. FedEx Express*, No. 03-5186, 2006 WL 1541027 (D.N.J. June 2, 2006).

breached the Confidentiality and Non-Disclosure Agreement (Counterclaim Ten), and converted Defendants' e-mails (Counterclaim Eleven).[11]

    f. <u>Plaintiff's Cross Motion to Strike</u>

Plaintiff cross moves to strike certain paragraphs from Defendants' Rule 56.1 Statement and exhibits to Defendants' motion based on inadmissibility. Pursuant to Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). This Court notes Plaintiff's objections and finds that, without more, striking Defendants' exhibits and statements is unnecessary. Furthermore, because this Court does not rely on the complained-of statements or attachments to reach any conclusions, the Cross Motion to Strike is denied as moot.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**, and Plaintiff's Cross Motion to Strike Portions of Defendants' Moving Papers is **DENIED as moot**. An appropriate Order follows.

                  s/ *Susan D. Wigenton*
                  **SUSAN D. WIGENTON**
                  **UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:    Hon. Leda D. Wettre U.S.M.J.
      Parties

---

[11] The parties also dispute whether Plaintiff returned his PNY-issued laptop to Defendants. (*Compare* Defs.' SMF ¶ 181 *with* Pl.'s Resp. to Defs.' SMF ¶ 181.) Although Defendants mention a separate claim for conversion in their brief as it relates to the PNY laptop, (Defs.' Reply Br. at 14 n.19), this Court notes that no such cause of action was included in their Counterclaims.

16