# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

———————————————————— x

MARK BERRADA;

                Plaintiffs,

    v.

GADI COHEN and PNY TECHNOLOGIES,
INC., a Delaware corporation;

                Defendants.

———————————————————— x

Honorable Susan D. Wigenton

Civil Action No. 16 CV 574 (SDW) (LDW)

**Return date:  April 16, 2018**

---

# BRIEF IN SUPPORT OF
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**OF COUNSEL:**

Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700
James S. Richter

*Attorneys for Defendants Gadi Cohen and PNY
Technologies, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................. 1

SUMMARY OF UNDISPUTED FACTS .......................................................... 2

I.   BACKGROUND ............................................................................................ 2

    A.   Mr. Berrada And PNY Enter Into The Consulting Relationship. ............... 2

    B.   The Parties Negotiate Employment, But Fail To Enter Into A
       Contract........................................................................................................ 3

    C.   Mr. Berrada Rejects The Opportunity To Become A Sales
       Representative................................................................................................ 4

II.   THE COMPLAINT ....................................................................................... 5

III.   DEFENDANTS' COUNTERCLAIMS ....................................................... 6

IV.   MR. BERRADA DESTROYS AND/OR DISPOSES OF KEY EVIDENCE ....... 7

STANDARD OF REVIEW ................................................................................ 7

LEGAL ARGUMENT........................................................................................ 8

I.   JUDGMENT SHOULD BE ENTERED IN FAVOR OF DEFENDANTS ON
    ALL OF MR. BERRADA'S CLAIMS............................................................ 8

    A.   The Consulting Agreement Was The Sole Operative Contract
       Between PNY And Mr. Berrada, And PNY Never Breached It. ................ 8

       i.   The alleged "2013 Contract" does not create a viable factual
          dispute. ............................................................................................. 8

       ii.   Because PNY and Mr. Berrada never entered into an
          employment contract, his breach of contract claim in Count IV
          fails.................................................................................................. 10

       iii.   The Consulting Agreement dooms Mr. Berrada's quasi-
          contract claims. ............................................................................... 11

       iv.   Mr. Cohen never negotiated or entered into a contract with
          Mr. Berrada in his individual capacity—and Mr. Berrada's
          claims are barred. ........................................................................... 12

    B.   Mr. Berrada's Fraud Claim In Count I Is Unsupported By The Facts
       And Law...................................................................................................... 13

       i.   PNY did not make a single misrepresentation to induce Mr.
          Berrada to enter into the Consulting Agreement. ......................... 13

       ii.   Mr. Berrada has not been injured as a result of the purported
          fraud. .............................................................................................. 16

i

      iii.    Mr. Berrada is not entitled to punitive damages. ........................... 17

C.    Because Mr. Berrada Was A Consultant At PNY, His Statutory Labor Claims Should Be Dismissed And Judgment Entered In Favor Of Defendants. .......................................................................................... 17

      i.    Mr. Berrrada is judicially estopped from asserting he was an employee. ........................................................................................ 17

      ii.    Mr. Berrada is not covered by the FLSA or New Jersey labor laws. ............................................................................................... 19

            a.    Mr. Berrada does not qualify as an "employee" under the FLSA. ........................................................................... 19

            b.    Mr. Berrada is not covered by New Jersey's wage statutes............................................................................... 21

            c.    Alternatively, even if Mr. Berrada was an employee, he was fully compensated for his services by PNY.......... 22

            d.    Alternatively, even if Mr. Berrada was an employee, he is exempt from the FLSA and the NJ Wage Act.......... 22

D.    Mr. Berrada Was Never A Sales Representative For PNY. ..................... 23

II.    JUDGMENT SHOULD BE ENTERED IN FAVOR OF DEFENDANTS ON THEIR COUNTERCLAIMS.................................................................. 24

A.    Mr. Berrada Breached The Consulting Agreement. ................................. 24

B.    Alternatively, Judgment Is Appropriately Entered Under Theories Of Promissory Estoppel Or Unjust Enrichment.............................................. 25

      i.    Defendants suffered extensive damages in reliance on Mr. Berrada's false promises, and should recover under promissory estoppel in Count III. ................................................. 25

      ii.    Mr. Berrada's unjust enrichment is clear...................................... 26

C.    Mr. Berrada's Performance Under The Consulting Agreement Violated The Implied Duty Of Good Faith And Fair Dealing and Judgment Should Be Entered On Count II. ............................................... 26

D.    Mr. Berrada's Fraudulent Misrepresentations Induced Defendants To Enter Into The Consulting Agreement...................................................... 27

E.    Mr. Berrada's Negligent Misrepresentations Have Damaged Defendants. .......................................................................................... 28

F.    By Misappropriating PNY Emails, Mr. Berrada Violated The NJTSA. .. 29

G.    By Taking And Keeping PNY Emails, And Inappropriately Accessing PNY's Servers, Mr. Berrada Has Violated The CFAA. ........................... 31

H.      By Taking PNY's Emails, Mr. Berrada's Is Liable Under The
        NJCROA. .......................................................................................... 33

I.      Mr. Berrada Has Clearly Breached The NDA. ........................................ 33

J.      Mr. Berrada Has Converted Defendants' Emails. ................................... 34

CONCLUSION ................................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*44A Trump Int'l, Inc. v. IncNetworks Inc*
    2014 WL 495145 (D.N.J. Feb. 6, 2014) ...................................................................8

*ABS Grp. Servs., Inc. v. Bd. of Review, Dep't of Labor*,
    2014 WL 2780339 (N.J. Super. Ct. App. Div. June 20, 2014) ...............................21

*Alexander v. CIGNA Corp.*,
    991 F. Supp. 427 (D.N.J.), *aff'd*, 172 F.3d 859 (3d Cir. 1998) ........................13, 14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................8

*Avatar Bus. Connection, Inc. v. Uni-Marts, Inc.*,
    2006 WL 1843136 (D.N.J. June 30, 2006) ..........................................................11

*Banco Popular N. Am. v. Gandi*,
    184 N.J. 161 (2005) .........................................................................................13, 16

*Barco Auto Leasing Corp. v. Holt*,
    228 N.J. Super. 77 (App. Div. 1988) ...................................................................34

*Bell Atl. Network Servs., Inc. v. P.M. Video Corp.*,
    322 N.J. Super. 74 (App. Div. 1999) .............................................................16, 17

*Berberian v. Lynn*,
    355 N.J. Super. 210 (App. Div. 2002), *aff'd as modified,* 179 N.J. 290 (2004) ......................11

*Billings v. Am. Exp. Co.*,
    2011 WL 5599648 (D.N.J. Nov. 16, 2011) .....................................................14, 15

*Borough of West Caldwell v. Borough of Caldwell*,
    26 N.J. 9 (1958) ....................................................................................................11

*Boyes v. Greenwich Boat Works, Inc.*,
    27 F. Supp. 2d 543 (D.N.J. 1998) ........................................................................17

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
    226 F. Supp. 2d 557 (D.N.J. 2002) ......................................................................15

*Brauser Real Estate, LLC v. Meecorp Capital Markets, LLC*,
    2012 WL 1079540 (D.N.J. Mar. 30, 2012) .....................................................17, 18

*Brownstone Specialty Fin., Inc. v. Freedom Mortg. Corp.*,
    2017 WL 2829607 (D.N.J. June 30, 2017) ...........................................................24

*Bryant v. Wasik*,
    2017 WL 1241422 (D.N.J. Apr. 3, 2017) ...............................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................8

*Chubb Ina Holdings Inc. v. Chang*,
 2017 WL 499682 (D.N.J. Feb. 7, 2017) ................................................................32

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
 2014 WL 4755487 (D.N.J. Sept. 24, 2014) ...........................................................34

*Donovan v. DialAmerica Mktg., Inc.*,
 757 F.2d 1376 (3d Cir. 1985) .................................................................................20

*EF Cultural Travel BV v. Explorica, Inc.*,
 274 F.3d 577 (1st Cir. 2001) ..................................................................................32

*Frederico v. Home Depot*,
 507 F.3d 188 (3d Cir. 2007) .....................................................................................8

*Gennari v. Weichert Co. Realtors*,
 288 N.J. Super. 504 (App. Div. 1996) ....................................................................28

*Gonzalez v. Sec'y of Dep't of Homeland Sec.*,
 678 F.3d 254 (3d Cir. 2012) .....................................................................................9

*Grant Mfg. & Alloying, Inc. v. McIlvain*,
 499 F. App'x 157 (3d Cir. 2012) .............................................................................33

*Hargrove v. Sleepy's, LLC*,
 220 N.J. 289 (2015) ...........................................................................................21, 22

*Hassler v. Sovereign Bank*,
 644 F. Supp. 2d 509 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010) .........12

*Highlands Ins. Co. v. Hobbs Grp., LLC.*,
 373 F.3d 347 (3d Cir. 2004) ...................................................................................29

*Houston v. Dialysis Clinic, Inc.*,
 2015 WL 3935104 (D.N.J. June 26, 2015) ...............................................................9

*Iliadis v. Wal–Mart Stores, Inc.*,
 191 N.J. 88 (2007) ..................................................................................................26

*Int'l Airport Ctrs., LLC v. Citrin*,
 440 F.3d 418 (7th Cir. 2006) ..................................................................................32

*Irving v. Chester Water Auth.*,
 439 F. App'x 125 (3d Cir. 2011) ...............................................................................9

*Irwin Katz & Assocs., Inc. v. Concepts in Health, Inc.*,
 2014 WL 6471486 (D.N.J. Nov. 19, 2014) .............................................................12

*Kinney Bldg. Assocs., L.L.C. v. 7-Eleven, Inc.*,
 2016 WL 2855063 (D.N.J. May 16, 2016) ..............................................................11

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
 337 F.3d 314 (3d Cir. 2003) ...................................................................................19

*Kurtz v. Oremland*,
 33 N.J. Super. 443 (Ch. Div.), *aff'd*, 16 N.J. 454 (1954) ........................................17

*Lamorte Burns & Co. v. Walters*,
   167 N.J. 285 (2001) ...................................................................................30

*Levin v. Robinson, Wayne & La Sala*,
   246 N.J. Super. 167 (Law. Div. 1990) ..............................................18, 19

*Lo Bosco v. Kure Eng'g Ltd.*,
   891 F. Supp. 1020 (D.N.J. 1995) ...............................................................17

*Lobiondo v. O'Callaghan*,
   357 N.J. Super. 488 (App. Div. 2003) .......................................................25

*Luscko v. S. Container Corp.*,
   408 F. App'x 631 (3d Cir. 2010) ................................................................14

*Marimar Textiles, Inc. v. Jude Clothing & Accessories Corp.*,
   2017 WL 4391748 (D.N.J. Oct. 2, 2017)....................................................12

*Mason v. Coca-Cola Co.*,
   774 F. Supp. 2d 699 (D.N.J. 2011) .............................................................27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).......................................................................................8

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016).........................................................................33

*NVR, Inc. v. Davern*,
   2015 WL 9450831 (D.N.J. Dec. 23, 2015) .................................................30

*Ocean Cape Hotel Corp. v. Masefield Corp.*,
   63 N.J. Super. 369 (App. Div. 1960) ..........................................................15

*Peruto v. TimberTech Ltd.*,
   126 F. Supp. 3d 447 (D.N.J. 2015) .............................................................28

*Philadelphia Newspapers, Inc. v. Bd. of Review*,
   397 N.J. Super. 309 (App. Div. 2007) ...................................................21, 22

*Podobnik v. U.S. Postal Serv.*,
   409 F.3d 584 (3d Cir. 2005)...........................................................................8

*Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*,
   307 N.J. Super. 461 (App. Div. 1998) ...................................................12, 26

*Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*,
   2013 WL 1431680 (D.N.J. Apr. 9, 2013) ........................................27, 28, 29

*Ramirez v. Gromitsaris*,
   2013 WL 2455966 (D.N.J. June 3, 2013) ....................................................22

*Reyeros v. United States*,
   2011 WL 5080308 (D.N.J. Oct. 24, 2011)...................................................32

*RNC Sys., Inc. v. Modern Tech. Grp., Inc.*,
   861 F. Supp. 2d 436 (D.N.J. 2012) ........................................................15, 16

vi

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
    81 F.3d 355 (3d Cir. 1996)................................................................................17

*Sapta Glob., Inc. v. Cilicorp, LLC*,
    2015 WL 1469600 (D.N.J. Mar. 30, 2015)......................................................13

*Scott v. Harris*,
    550 U.S. 372 (2007)..........................................................................................10

*Shell Oil Co. v. Trailer & Truck Repair Co., Inc.*,
    828 F.2d 205 (3d Cir. 1987)..............................................................................17

*Singer v. A. Hollander & Son*,
    202 F.2d 55 (3d Cir. 1953)................................................................................30

*Sons of Thunder, Inc. v. Borden, Inc.*,
    148 N.J. 396 (1997) ..........................................................................................27

*Soto v. Trella*,
    2007 WL 4355463 (D.N.J. Dec. 10, 2007)........................................................9

*StrikeForce Techs., Inc. v. WhiteSky, Inc*
    2013 WL 3508835 (D.N.J. July 11, 2013)........................................................29

*Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*,
    716 F.2d 220 (3d Cir. 1983)..............................................................................11

*Thyroff v. Nationwide Mut. Ins. Co.*,
    8 N.Y.3d 283 (2007).........................................................................................34

*United States v. John*,
    597 F.3d 263 (5th Cir. 2010) ............................................................................32

*United States v. Rodriguez*,
    628 F.3d 1258 (11th Cir. 2010) ........................................................................32

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009) ............................................................................33

*VT Inv'rs v. R & D Funding Corp.*,
    733 F. Supp. 823 (D.N.J. 1990) ........................................................................14

*Webster v. Rutgers-New Jersey Med. Sch.*,
    2017 WL 3399997 (D.N.J. Aug. 4, 2017) ........................................................34

*Wenzel v. Nautilus Ins. Co.*,
    2011 WL 1466323 (D.N.J. Apr. 18, 2011), *aff'd,* 474 F. App'x 862
    (3d Cir. 2012)....................................................................................................14

*Wilson v. Amerada Hess Corp.*,
    168 N.J. 236 (2001) .....................................................................................26, 27

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*,
    774 F.3d 1065 (6th Cir. 2014) ..........................................................................33

**STATUTES, REGULATIONS, AND RULES**

18 U.S.C. §1030, *et seq.* ...................................................................................7, 31, 33

N.J.S.A. §2A:38A–3, *et seq.* ...................................................................................7, 33

N.J.S.A. §2A:61A–1, *et seq.* ...................................................................................6, 24

N.J.S.A. §25:1–15 ...............................................................................................13

N.J.S.A. §34:11–4.1, *et seq.* ......................................................................6, 21, 22, 23

N.J.S.A. §34:11–56a, *et seq.* .............................................................................6, 21

N.J.S.A. §56:15–1, *et seq.* ...................................................................7, 29, 30, 31

29 C.F.R. §541.100 .............................................................................................23

29 C.F.R. §541.200 .............................................................................................23

29 C.F.R. §541.201 .............................................................................................23

29 C.F.R. §541.202 .............................................................................................23

29 C.F.R. §541.203 .............................................................................................23

29 C.F.R. §541.601 .............................................................................................23

N.J.A.C. §12:56–7.1 ............................................................................................23

N.J.A.C. §12:56–7.2 ............................................................................................23

Fed. R. Civ. P. 56(a) ...........................................................................................7

Local Civ. R. 56.1 ..............................................................................................2

**OTHER AUTHORITIES**

90 C.J.S. Trover and Conversion §14 .........................................................................34

## PRELIMINARY STATEMENT

Mark Berrada provided consulting services to PNY for less than thirteen months for which he was fully compensated. His claim that the consulting agreement between he and PNY somehow included *additional* "super-secret" terms is not supported by the facts and rankles common sense. Instead of secret backroom deals, every witness and piece of evidence supports that Mr. Berrada was paid as agreed. Mr. Berrada's theory is not only implausible on its face but has not a single scintilla of support in the record (other than, of course, in Mr. Berrada's own self-serving testimony).

Mr. Berrada also relies on an "agreement" attached to his complaint that he claims is a binding employment contract. PNY does not dispute that in July 2014 it offered Mr. Berrada a position as an employee. What is undisputedly not true—as evidenced by documents and testimony—is that no agreement was ever consummated. This litigation was the first time anyone at PNY ever saw a signed offer letter from Mr. Berrada because *no such document* existed.

Mr. Berrada's "pronounced capability for deceptiveness and deceit" underpins this entire lawsuit.[1] For years, he has stated under oath that he is—and was—unemployed and without income. On this basis alone, he should be estopped from claiming he was ever an "employee" of PNY or did not receive all the income he was allegedly promised.

Simply put, the evidence is clear that Mr. Berrada was not (and never was) an employee of PNY. Notably, as this litigation has gone on, not only have the terms of Mr. Berrada's "contracts" with PNY changed, but so has the timeframe for, and amount of, damages he seeks. Mr. Berrada now claims a right to upwards of hundreds of millions of dollars in return for having provided thirteen months of consulting services to PNY. There is no support in the facts, or the law, for his claims.

Judgment is also appropriate on Defendants' counterclaims. Mr. Berrada knowingly and

---

[1] Not surprisingly, Mr. Berrada has been diagnosed as having "delusional beliefs." *See* Declaration of James S. Richter, Esq. ("Richter Decl.") Ex. 81, at PNY-0067694.

intentionally misrepresented his purported "expertise" and contacts to induce Defendants into engaging him which directly led to hundreds of thousands of dollars in lost product costs. Moreover, during and after their consulting relationship ended, Mr. Berrada sent, downloaded, and kept highly confidential PNY information without authorization and in direct conflict with nondisclosure agreements he signed. Mr. Berrada then proceeded to dispose of his personal laptop and cellphone (on which he did and could access PNY servers) and failed to return his PNY-issued laptop to PNY, leaving Defendants completely in the dark about the full extent to which Mr. Berrada's intentional theft of confidential information has harmed them. For these reasons, and those discussed below, judgment should be entered in favor of Defendants on all claims and counterclaims.

## SUMMARY OF UNDISPUTED FACTS[2]

### I.  BACKGROUND

#### A.  Mr. Berrada And PNY Enter Into The Consulting Relationship.

In August and September 2013, Mr. Berrada and PNY had discussions relating to Mr. Berrada providing consulting services to PNY. Mr. Berrada's primary pitch was the introduction of a completely new product to PNY: paper shredders. *See* Defendants' Statement of Material Facts not in Dispute ("SOF") ¶¶24-36, 64-65.

Thus, in late September 2013, Mr. Cohen, on behalf of PNY, and Mr. Berrada entered into an oral consulting agreement (the "Consulting Agreement") which had straightforward terms: PNY would compensate Mr. Berrada $15,000 a month and reimburse his reasonable business expenses. The Consulting Agreement was to be month-to-month. *Id.* ¶¶37-41.

Mr. Berrada's efforts to launch the shredder product were slim and ineffectual. PNY ultimately decided not to start the product line because of potential patent issues, safety concerns, and

---

[2] Defendants respectfully refer the Court to the undisputed facts set forth in in Defendants' accompanying Rule 56.1 Statement (as supported by the exhibits to the Richter Declaration submitted herewith).

(significantly) a lack of customer interest. *Id.* ¶¶67-75. PNY then had Mr. Berrada focus on supporting

the expansion of an already-existing product: PowerPacks. Mr. Berrada was given a team and entrusted

with making decisions relating to how to grow the category, how to order inventory, what customers

to approach, what suppliers to use, and how work would be assigned. *Id.* ¶¶44-47, 76-82, 146-47.

Mr. Berrada was only compensated for his services when he submitted invoices to PNY. *Id.*

¶¶48-49, 112. Mr. Berrada did not submit his first invoice *for services* until April 2014 (six months

*after* he began providing consulting services to PNY in October 2013). *Id.* ¶¶112-14, 195. The reason

why is telling—Mr. Berrada was involved in a contentious child support proceeding where his

employment and level of income was squarely at issue. In fact, at a hearing in March 2014 Mr. Berrada

testified (under oath) that he was *not* employed (and thus had no income). *Id.* ¶¶189-94. Mr. Berrada

has since testified here that he was not "employed" during this time. *Id.* ¶56. Mr. Berrada then

submitted invoices for the services he provided to PNY for October 2013 – March 2014, as well as

March, May, and June of 2014 (for which he was compensated by PNY). *Id.* ¶¶116-18.

**B.    The Parties Negotiate Employment, But Fail To Enter Into A Contract.**

In July of 2014, Mr. Berrada and PNY started negotiating the terms of a potential offer of

employment. Mr. Berrada was provided with "new hire paperwork," which he filled out and executed

(including an acknowledgment that any employment would be at will and not for any set period of

time). Notably, Mr. Berrada did not list any of his prior employers as references, provide phone

numbers for prior supervisors, or provide the reason he left any of his prior positions. *Id.* ¶¶88-91.

On July 16, 2014, Mr. Berrada was offered in writing a position as a vice-president at PNY

(the "July 16 Offer"). Mr. Berrada rejected certain terms of this offer, and the parties continued to

negotiate. In fact, *nearly two weeks later*, Mr. Berrada set up a meeting with Mark Ciano, the Vice-

President of Finance at PNY, to discuss his "offer letter." Thereafter, as negotiations continued,

Suzanne Blanchette-Grigoletti, who was the Director of Human Resources at PNY, drafted and signed

3

subsequent offers for Mr. Berrada dated July 29, July 30, July 31, and August 1, 2014. As late as *October 2014*, Mr. Berrada again met with Mr. Ciano to discuss his "offer letter." *Id.* ¶¶93-109.

Eventually, negotiations stalled, and PNY made the decision to instead offer Mr. Berrada a position as an independent sales representative. This was due, in large part, to Mr. Berrada's aggressive and erratic behavior, which had caused PNY's executive management to refuse to work with him. *Id.* ¶¶125-31. Thus, on October 15, 2014, Mr. Berrada submitted invoices covering the services he provided from July 2014 through October 15, 2014. *Id.* ¶119. On the invoice, Mr. Berrada wrote that it was "Paid in Full," and signed his name. It was also written: "This invoice is full payment for prior relationship/agreement. No monies owed AFTER this payment except for 1 expense report ($3,324.32 after 10/15/17)." *Id.* ¶¶119-24. At no point prior to this litigation did Mr. Berrada complain, claim, or otherwise assert that he was owed any monies from PNY, commissions or otherwise, in addition to what he was already paid (an amount which totaled $272,033.23, *see id.* ¶¶51, 54).

**C.      Mr. Berrada Rejects The Opportunity To Become A Sales Representative.**

On October 28, 2014, Heidi Stuto, Treasurer of PNY, emailed Mr. Berrada a draft sales representative agreement. *Id.* ¶¶133-36. Mr. Berrada thanked Ms. Stuto for the draft. *Id.* ¶137.

On November 11, 2014, Mr. Berrada sent Mr. Ciano an email claiming he was "confused" that he was "offered a non-employee manufacturer's rep agreement[.]" *Id.* ¶138. Mr. Berrada did *not* inquire why he was receiving this if he already had a signed agreement with PNY, or make any reference to commissions, salary, or benefits purportedly due to him. *Id.* ¶139. On November 19, 2014, Ms. Stuto sent Mr. Berrada a revised sales representative agreement noting that he should review it and call her with any questions. Mr. Berrada never responded to this email.[3] *Id.* ¶¶141-43.

---

[3] For the Court's convenience, Defendants have created a timeline of the material events in this matter, which is attached as Exhibit 83 to the Richter Declaration.

## II.      THE COMPLAINT

Nearly a year later, Mr. Berrada initiated this lawsuit. To the surprise of Defendants, Mr.
Berrada claimed that PNY breached *two* contracts with him. The first appeared to be a version of the
Consulting Agreement, but included two additional "terms," never before referenced by Mr. Berrada:
(i) a right to 5% of the sales proceeds of PNY's entire accessory product line and (ii) a right to 25% of
PNY's gross profit from the worldwide sale of such products. *See* Compl. ¶13, ECF No. 1-2.

Mr. Berrada also attached a purported "written contract," through which he claimed he was
offered and accepted a position as a vice-president on July 16, 2014. *Id.* at Ex. A. Mr. Berrada's
"version" contained cross-outs of certain terms that were never approved, let alone ever seen, by PNY.
Key for Mr. Berrada's case are the terms he crossed out: (i) his potential employment as being "at
will," and (ii) that the July 16 offer "supersedes any other representation or offers made to you in
connection with your employment." Compl. at Ex. A. Mr. Berrada claimed that this "contract" entitled
him to (i) .5% of existing customer sales; (ii) 1% of new customer sales; (iii) a base salary of $120,000
a year; and (iv) fringe benefits. Compl. ¶15. In connection with both of these "contracts," Mr. Berrada
claimed a right to commissions in connection with products on which he never worked. Mr. Berrada
brought claims for breach of contract and quasi-contract premised on Defendants' purported failure to
compensate him in accordance with the terms of these two "contracts," as well as claims under the Fair
Labor Standards Act ("FLSA") and corresponding state law for failing to pay overtime.

Thereafter, Mr. Berrada amended his complaint and incredibly changed the terms of his
"version" of the Consulting Agreement. Now, Mr. Berrada claimed a right to (i) 5% of worldwide
*gross sales* of all accessories (including shredders) "*for as long as those existing and new products are
sold*"; and (ii) 25% of the gross profit from the worldwide sale of such products "*for so long as those
existing and new products are sold.*" Richter Decl. Ex. 1, Am. Compl. ("AC") ¶12 (emphasis added).
Mr. Berrada also now alleged that Mr. Cohen made him "super-secret" promises and said that their

5

agreement must not be put in writing. *Id.* ¶13. Mr. Berrada claimed that this "contract" ran parallel to the July 2014 "contract," entitling him to compensation under both contracts. *See id.* ¶17.

Mr. Berrada's Amended Complaint contains claims for: (i) fraud; (ii) breaches of contract and quasi-contract claims based on the failure of Defendants to pay him under both the 2013 "contract" and the 2014 "contract"; (iii) a violation of the New Jersey Wage Payment Act (the "NJ Wage Payment Act") for failing to pay him "all of his unpaid wages when they were due"; (iv) violation of the FLSA for failure to pay overtime; (v) violation of New Jersey Wage & Hour Law ("NJ Wage Law"), for failure to pay overtime; and (vi) a violation of the New Jersey Sales Representatives' Rights Act.

## III.    DEFENDANTS' COUNTERCLAIMS

Despite promising to increase sales by adding and expanding product lines because of his knowledge, expertise and relationships with suppliers and customers, unique knowledge of the supply chain, and contacts in Asia, the truth was far different and Mr. Berrada was unable accomplish anything of the sort. *See* SOF ¶¶70, 83-85, 146-60. While Mr. Berrada did expand the number of PowerPacks PNY offered, this decision ultimately proved fatal as he saddled PNY with large lots of excess inventory which, to date, is valued at ███████. *Id.* ¶¶146-60. This comes not only at a direct cost (as PNY cannot move the product), but an indirect cost—PNY has lost a competitive edge and suffered a loss of goodwill. *Id.* On these grounds, Defendants have brought counterclaims for (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) promissory estoppel; (iv) unjust enrichment; and (v) fraudulent and negligent misrepresentation.

During discovery, Defendants learned several new (and disturbing) facts. Specifically, as his time with PNY ended, Mr. Berrada copied and downloaded all of his PNY emails (and attachments, totaling nearly *19,000* combined). SOF ¶¶164-71. He kept a USB drive containing confidential PNY information and only provided it to his counsel once litigation began nearly a year later. PNY operates in an extremely competitive industry and takes great pains to keep its business information confidential.

6

All consultants and employees sign nondisclosure agreements, every PNY email contains disclaimers and warnings, and only certain employees can access PNY's database of financial information. Mr. Berrada never obtained such access, and he signed two Confidentiality and Non-Disclosure Agreements (the "September NDA" and "November NDA," respectively). *Id.* ¶¶29-32, 61-62, 66, 87.

Mr. Berrada also sent confidential PNY information to his personal email account. Moreover, when the Consulting Agreement concluded, Mr. Berrada continued to access PNY servers. *Id.* ¶¶161-75. For these reasons, Defendants have also asserted counterclaims for (i) a violation of the New Jersey Trade Secrets Act ("NJTSA"); (ii) a violation of the Computer Fraud & Abuse Act ("CFAA"); (iii) a violation of the New Jersey Computer Related Offenses Act ("NJCROA"); (iv) breach of the November NDA; and (v) conversion.

## IV.   MR. BERRADA DESTROYS AND/OR DISPOSES OF KEY EVIDENCE

In November 2016, PNY served discovery requests seeking images and forensic analyses of any laptops and mobile devices Mr. Berrada used to conduct PNY business. Mr. Berrada responded to these requests, simply stating: "None." It turns out, however, that Mr. Berrada disposed of and/or destroyed his personal laptop and mobile device in late November 2016 (or sometime thereafter). Moreover, Mr. Berrada was issued a PNY laptop for business purposes, yet PNY never received it back from him. For these reasons, Defendants have been unable to determine the scope of damage Mr. Berrada caused to their computer systems and business goodwill, and/or if Mr. Berrada has used this confidential information to his personal advantage or shared it with any third-parties. SOF ¶¶178-84.[4]

## **STANDARD OF REVIEW**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[The mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly

---

[4] Defendants thus reserve the right to seek leave to file a motion for an adverse inference.

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the moving party establishes that the evidentiary record "would be insufficient to permit the nonmoving party to carry its burden of proof," then summary judgment is appropriate. *44A Trump Int'l, Inc. v. IncNetworks Inc.*, No. 12-CV-2292, 2014 WL 495145, at *2 (D.N.J. Feb. 6, 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). After the moving party shows there is no genuine dispute, the nonmoving party has the burden of "set[ting] forth specific facts showing a genuine issue for trial[.]" *Id.* The nonmovant "must do more than simply show that there is some metaphysical doubt as to material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rely on "bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (internal quotation marks omitted).

## <u>LEGAL ARGUMENT</u>

### I.   JUDGMENT SHOULD BE ENTERED IN FAVOR OF DEFENDANTS ON ALL OF MR. BERRADA'S CLAIMS.

#### A.   The Consulting Agreement Was The Sole Operative Contract Between PNY And Mr. Berrada, And PNY Never Breached It.

The undisputed evidence establishes that there was one operative agreement between PNY and Mr. Berrada: the Consulting Agreement. PNY was obligated to compensate Mr. Berrada $15,000 a month and reimburse business expenses upon his submission of invoices, which it did. SOF ¶¶37-38, 112-24. In fact, upon submitting his final invoice for services, Mr. Berrada explicitly acknowledged this, signing that he was "paid in full." *Id.* ¶¶119-22.

Without any evidence of a breach of a term of the contract that existed between them, Mr. Berrada's claim for breach fails. *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Thus, judgment should be entered in favor of Defendants on Count II, as well as Counts III-VII.

##### i.   The alleged "2013 Contract" does not create a viable factual dispute.

Despite the overwhelming evidence establishing PNY's obligations under the Consulting

Agreement and its satisfaction thereof, Mr. Berrada has alleged and continues to assert that there were other "super-secret" terms which were breached. There is no evidence that such terms ever existed—other than Mr. Berrada's self-serving (and ever-changing) testimony and allegations.

Where, like here, there is no evidence to support self-serving testimony, summary judgment is not precluded. *E.g.*, *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011) ("self-serving deposition testimony is insufficient to raise a genuine issue of material fact"); *Houston v. Dialysis Clinic, Inc.*, No. CIV.A. 13-4461 FLW, 2015 WL 3935104, at *14 (D.N.J. June 26, 2015) (same); *see also Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012).

Here, there is no documentary evidence to allow for even an inference that Mr. Berrada was entitled to any percentage of sales or profits. There are no documents referring to Mr. Berrada's entitlement to or payment of commissions, nor any documents setting up such a payment structure. Most significantly, there is not a single document in which Mr. Berrada complained to PNY about not being fully paid. This is in stark contrast to Mr. Berrada's immediate complaints when he did not receive a check from PNY for his expenses. *See* SOF ¶124. Likewise, there is not a single witness who has corroborated Mr. Berrada's claims. *See Soto v. Trella*, No. CIV.A. 03-1098 (SDW), 2007 WL 4355463, at *2 (D.N.J. Dec. 10, 2007) (Wigenton, J.) (self-serving testimony insufficient)

The overwhelming evidence establishes that no such terms existed. Mr. Berrada submitted invoices for his services in which he sought (and received) what he was entitled to: $15,000 a month—which he acknowledged on his final invoice. *See* Richter Decl. Exs. 22, 52. Here, when the record is in stark contrast to Mr. Berrada's self-serving testimony, a rational trier of fact could not credit his testimony. *Bryant v. Wasik*, No. CV 13-02818-SDW-SCM, 2017 WL 1241422, at *4 (D.N.J. Apr. 3, 2017) (Wigenton, J.) (entering judgment in part due to failure "to identify evidence, other than his own self-serving statements" to prove claim).

      **ii.**     **Because PNY and Mr. Berrada never entered into an employment contract, his breach of contract claim in Count IV fails.**

Mr. Berrada cannot succeed on his contract and quasi-contract claims premised on the so-called "2014 contract" because he cannot establish that there *was* a contract entered into in 2014. The undisputed evidence instead establishes that, while PNY negotiated a potential contract with Mr. Berrada—and, indeed, made numerous *offers* to Mr. Berrada—no valid contract was ever consummated. For these reasons, judgment should be entered in favor of Defendants on Count IV.

Both sides agree that PNY extended to Mr. Berrada a formal offer of employment dated July 16, 2014. Mr. Berrada never accepted this offer. Instead, Mr. Berrada expressed his disagreement with certain terms and the parties continued to negotiate for weeks *after* July 16 (which included subsequent draft offer letters being provided, and multiple meetings between Mr. Berrada and Mr. Ciano, with one occurring as late as *October*). Indeed, Mr. Berrada submitted invoices in accordance with the Consulting Agreement for the services he provided during this very time. SOF ¶¶88-109.

Mr. Berrada's reliance on "Exhibit A" to his Complaint cannot create a material issue of fact. *Supra* at 9. Not one person at PNY *ever* saw the July 16 Offer countersigned, or marked up, by Mr. Berrada. SOF ¶96. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Moreover, assuming, *arguendo*, that Mr. Berrada timely signed the July 2014 Offer, it still would not constitute a valid contract. It lacked the referenced "customer list" (which only shows up in later versions), the "commission plan" that required Mr. Cohen's signature, *see* Richter Decl. Exs. 47, 49, 50, *and* Mr. Berrada crossed out key terms which were never countersigned by PNY.[5] *See, e.g.,*

---

[5] Obviously, Mr. Berrada needed to cross out terms in his "2014 contract" because they expressly

*Berberian v. Lynn*, 355 N.J. Super. 210, 216-17 (App. Div. 2002), *aff'd as modified,* 179 N.J. 290 (2004). Thus, even if Mr. Berrada *had* signed the July 2016 Offer, it would still not form the basis of a valid contract. Judgment should be entered in PNY's favor on Count IV.

### iii. The Consulting Agreement dooms Mr. Berrada's quasi-contract claims.

Mr. Berrada asserted a number of quasi-contract claims premised on a purported breach of his "contracts" with PNY. *See* Counts III (unjust enrichment), V (promissory estoppel), VI (unjust enrichment), VII (quantum meruit). "Quasi-contract liability will not be imposed . . . if an express contract exists concerning the identical subject matter. The parties are bound by their agreement, and there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties." *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983) (quoting *Borough of West Caldwell v. Borough of Caldwell*, 26 N.J. 9, 29 (1958)).

Here, there was an actual contract—the Consulting Agreement (or, in Mr. Berrada's view, the Consulting Agreement and the "2014 contract," *see* AC ¶¶12, 17)—that governed the entire relationship between the parties. Thus, these claims should be dismissed on that basis alone. *Kinney Bldg. Assocs., L.L.C. v. 7-Eleven, Inc.*, No. 2:15-CV-7917-SDW-LDW, 2016 WL 2855063, at *5 (D.N.J. May 16, 2016) (Wigenton, J.) (unjust enrichment and promissory estoppel claims "cannot be maintained where a valid contract fully defines the parties' respective rights and obligations"); *Avatar Bus. Connection, Inc. v. Uni-Marts, Inc.*, No. CIV A. 04-1866 (JBS), 2006 WL 1843136, at *6 (D.N.J. June 30, 2006) (claims for quantum meruit do not apply if there is a contract between the parties).

Alternatively, the undisputed evidence establishes that Mr. Berrada's quasi-contract claims could not otherwise stand. Unjust enrichment requires establishing "that the retention of the benefit [from the plaintiff] by the defendant is inequitable," requiring proof that "the failure of remuneration

---

destroy the basis for his claims. Regardless, Mr. Berrada had *already* signed the employment application. *Compare* SOF ¶92 *to* AC at Ex. A.

enriched defendant *beyond its contractual rights*." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010). "*[Q]uantum meruit* enables a party to recover the reasonable value of services rendered in the absence of a contract governing wages or remuneration." *Marimar Textiles, Inc. v. Jude Clothing & Accessories Corp.*, No. CV 17-2900 (JLL), 2017 WL 4391748, at *4 (D.N.J. Oct. 2, 2017). Promissory estoppel is intended "to avoid the substantial hardship or injustice which would result if such a promise was not enforced." *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 307 N.J. Super. 461, 469 (App. Div. 1998). Here, Mr. Berrada was fully compensated under the terms of the Consulting Agreement (acknowledging such on his final invoice). He can show no injustice, or inequitableness, or that PNY was somehow enriched beyond its contractual rights. Thus, judgment should be entered in Defendants' favor for this alternative reason.

   iv. **Mr. Cohen never negotiated or entered into a contract with Mr. Berrada in his individual capacity—and Mr. Berrada's claims are barred.**

  Mr. Berrada claims that Mr. Cohen offered to personally pay him the alleged "secret" commission terms of the Consulting Agreement should PNY fail to do so. Such an assertion is not only unsupported by the facts or general corporate law, but is undisputedly barred by the Statute of Frauds.

  First, the Consulting Agreement was between PNY and Mr. Berrada *only*. It is black letter law that representing PNY in connection with entering into, and negotiating the terms of, the Consulting Agreement cannot create liability for Mr. Cohen. *See Irwin Katz & Assocs., Inc. v. Concepts in Health, Inc.*, No. 3:13-CV-1217 FLW, 2014 WL 6471486, at *14 (D.N.J. Nov. 19, 2014). "[T]he mere fact that an individual executed a contract for the purpose of binding a corporation does not also render that individual liable." *Id.* While there is an exception to this general rule where "there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal," *id.* at *14, no such evidence exists here. Mr. Berrada's claim of a "secret" deal is not only absurd, but has zero evidentiary support.

Regardless, the Statute of Frauds bars claims of oral guaranties to pay the obligations of another. "Under New Jersey law, a guaranty is not enforceable unless it is in writing." *Sapta Glob., Inc. v. Cilicorp, LLC*, No. CIV. 13-3698 KM MAH, 2015 WL 1469600, at *5 (D.N.J. Mar. 30, 2015). Specifically, New Jersey's Statute of Frauds provides: "A promise to be liable for the obligation of another person, in order to be enforceable, shall be in a writing signed by the person assuming the liability or by that person's agent." N.J.S.A. §25:1–15. Here, Mr. Berrada has specifically alleged that there is no writing that exists to show this alleged guaranty by Mr. Cohen. *See* AC ¶14.[6] For these reasons, judgment should be entered in favor of Mr. Cohen on Counts I-V, VII.

## B.    Mr. Berrada's Fraud Claim In Count I Is Unsupported By The Facts And Law.

Mr. Berrada has brought a claim for fraud, in which he asserts Defendants somehow fraudulently induced him to consult for PNY during a period when he had been unemployed for months. This claim is meritless. In order to succeed, Mr. Berrada—who has the burden of "coming forward with evidence which could lead a jury to find *clear and convincing* proof of fraud," *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J.), *aff'd,* 172 F.3d 859 (3d Cir. 1998) (emphasis added)—must establish: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge of falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) damages. *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005). He cannot do so.

### i.    PNY did not make a single misrepresentation to induce Mr. Berrada to enter into the Consulting Agreement.

A viable fraudulent inducement claim requires not only that there be a misrepresentation made to induce a plaintiff into a contract, but that such misrepresentation be knowing or intentional. Here, each of the purported "misrepresentations" that Mr. Berrada has asserted have no basis in the evidence,

---

[6] While there is a "limited exception to this rule," it only applies if there is evidence that Mr. Cohen made the guaranty to further his own personal interests. *See Sapta Glob.*, 2015 WL 1469600, at *5. There is no evidence (or claim) that Mr. Cohen did such a thing.

and cannot form the basis of a viable fraud claim as a matter of law.

*First*, "[s]tatements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." *Alexander*, 991 F. Supp. at 435; *see also Luscko v. S. Container Corp.*, 408 F. App'x 631, 634 (3d Cir. 2010) (a fraud claim "cannot be predicated upon representations which involve things to be done in the future"). Likewise, "statements that can be categorized as 'puffery' or 'vague and ill-defined opinions' are not assurances of fact and thus do not constitute misrepresentations." *Alexander*, 991 F. Supp. at 435. Such well-established law is fatal to Mr. Berrada's claim, as he relies on claims that Defendants told him he would "make more money working for Cohen and PNY," that his "employment constituted a long term commitment," and that PNY "intended" to do or buy certain things. AC ¶21. None of these are "assurances of fact," but are the very type of "predictions of future events" that "cannot serve the basis for a fraud claim just because they subsequently turned out not to be true." *Alexander*, 991 F. Supp. at 435 (claims that the "relationship would be long lasting," or "one in 'perpetuity','" could not form the basis for a fraud claim); *see also VT Inv'rs v. R & D Funding Corp.*, 733 F. Supp. 823, 838 (D.N.J. 1990) (claim that plaintiffs would "'realize a positive cash flow in excess of $60,000 per month' can only be characterized as 'puffery'").

*Second*, Mr. Berrada "must prove that Defendant[s] knew that the representations were false—that [they] had no intention of performing [their] obligations—at the time the obligations were made." *Wenzel v. Nautilus Ins. Co.*, No. CIV.A 10-6270 SRC, 2011 WL 1466323, at *5 (D.N.J. Apr. 18, 2011), *aff'd*, 474 F. App'x 862 (3d Cir. 2012). The "mere fact of nonperformance" cannot establish the requisite intent for purposes of fraud. *See id.*; *see also Billings v. Am. Exp. Co.*, No. CIV.A. 10-3487, 2011 WL 5599648, at *11 (D.N.J. Nov. 16, 2011) ("A failure to fulfill a promise may constitute a breach of contract, but it is not fraud and the nonperformance of that promise does not make it so.").

14

To be sure, there is no evidence that Defendants made *any* of the assertions which Mr. Berrada relies on, nor could any of these assertions qualify as anything other than predictions or puffery if there was.

Assuming, however, that the representations could somehow create an obligation for PNY to perform in the future, Mr. Berrada cannot show the requisite intent on Defendants' part. After all, Mr. Berrada has conceded that he "would not establish a residence in New Jersey." SOF ¶43. Nor can there be a dispute that Defendants never intended to keep Mr. Berrada on "long-term"—they extended him an *offer of employment* months into his consulting relationship. *Id.* ¶¶88-95. Finally, Mr. Berrada was engaged to start a shredder product line, which PNY obviously wanted to succeed. PNY's ultimate decision not to pursue the line does not show that it did not intend to start the line when it entered into the Consulting Agreement. *Id.* ¶¶26-28, 33-38, 67-68, 75; *see Billings*, 2011 WL 5599648, at *11 ("AMEX's subsequent decision not to maintain the Credit Line Account does not alone show that it did not intend to maintain the Account at the time it collected the fee."). Overall, where, like here, "[t]here is not a shred of proposed proof of the existence of a wrongful intent on the part of" Defendants before the Consulting Agreement was entered into, Mr. Berrada's claim for fraudulent inducement must fail. *Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369, 382 (App. Div. 1960).

*Third*, those few representations that do *not* qualify as puffery or future predictions are barred by the economic loss doctrine, which "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from contract." *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012). If (like here) the "alleged misrepresentations are directly related to [the defendant's] performance under the [contract] and form the basis of [the plaintiff's] breach of contract claim," a fraudulent inducement claim is barred. *See id.*; *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002). Mr. Berrada asserts that Defendants would provide him with resources to help "sell the shredder product line which [he] would bring to

PNY," and that PNY would compensate him with a percentage of sales and profits. AC ¶21; *compare id.* ¶¶30, 31. Such claims are "intrinsic to [Defendants'] performance under the contract and have the same measure of damages as [Mr. Berrada's] breach of contract claim," *RNC Sys.*, 861 F. Supp. at 453, and are thus barred.  Consequently, judgment should be entered in Defendants' favor on Count I.

### ii.      Mr. Berrada has not been injured as a result of the purported fraud.

A claim for fraud requires proof of reliance and resulting damage. *See Banco Popular N. Am.*, 184 N.J. at 172-73. Here, Mr. Berrada claims that he entered into the Consulting Agreement as a result of purported representations relating to: (i) the potential longevity of their relationship, (ii) potential "perks" of employment; (iii) the type of infrastructure that would be given to him for shredders, and (iv) the amount of money he could or would make. *See* AC ¶21. There is, however, no evidence that Mr. Berrada relied on *any* of these purported "misrepresentations" in entering the Consulting Agreement. Mr. Berrada's claim that he forewent other business opportunities is not only completely speculative,[7] but undercut by Mr. Berrada's actions. Once it became clear that a decision was made not to proceed with the shredder line, Mr. Berrada did not simply get up and leave PNY; instead, *he chose to remain at PNY for nearly a year. See* SOF ¶¶76-109. In short, there is no evidence that Mr. Berrada would not have joined or stayed at PNY as long as he did if PNY had not made these representations to him, or, indeed, would have done anything differently, thus dooming his claim.

Not only that, but Mr. Berrada's request for damages is identical to what he claims he would have been paid under the terms of the alleged oral contract. Even more significant is that Mr. Berrada has failed to offer any evidence of a specific injury flowing from his reliance on Defendants' purported

---

[7] Despite allegations that he had an opportunity to "become a principal in a new business," there is no evidence that such "new business" existed. The "business" had no name, was never incorporated, no legal or formal terms were agreed to between any hypothetical "partners," and (most significantly) there were no customers or sales. *See* SOF ¶¶17-23. Notably, New Jersey follows the "New Business Rule," which bars prospective profits from a new business or venture as "too remote, contingent and speculative." *See Bell Atl. Network Servs., Inc. v. P.M. Video Corp.*, 322 N.J. Super. 74, 98-101 (App. Div. 1999).

misrepresentations. Even if PNY never intended to go forward with a shredder product line, Mr. Berrada has offered no evidence to establish how that damaged him. *See, e.g.*, *Kurtz v. Oremland*, 33 N.J. Super. 443, 453 (Ch. Div.), *aff'd*, 16 N.J. 454 (1954). It is not enough to simply speculate that shredders would have earned PNY (and thus himself) some sort of profit; Mr. Berrada has the burden of proving it. *See id.*; *Bell Atl. Network Servs.*, 322 N.J. Super. at 101. He did not and cannot do so.

### iii.    Mr. Berrada is not entitled to punitive damages.

Punitive damages cannot be awarded for a claim for fraud "without some additional aggravating element," *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1034 (D.N.J. 1995), such as an "evil-minded act" or conduct that is "willful and wantonly reckless or malicious." *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 549 (D.N.J. 1998). Because there is no evidence to support any such finding, Mr. Berrada's baseless request for punitive damages should be stricken.

### C.    Because Mr. Berrada Was A Consultant At PNY, His Statutory Labor Claims Should Be Dismissed And Judgment Entered In Favor Of Defendants.

### i.    Mr. Berrrada is judicially estopped from asserting he was an employee.

For years, Mr. Berrada represented—*under oath*—that he was unemployed and had no income. *See* SOF ¶¶189-200. Here, Mr. Berrada has taken the exact opposition position, in an attempt to line his own pockets while seeking to minimize his child support payments. The disgusting (and criminal) nature of this aside, such clear intent to play "fast and loose" with the judiciary should be rejected.

The doctrine of judicial estoppel operates to prevent "a party from arguing contradictory factual positions in different courts." *Shell Oil Co. v. Trailer & Truck Repair Co., Inc.*, 828 F.2d 205, 209 (3d Cir. 1987). It is intended for those who "act with the intent to play fast and loose with the courts." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996). Three factors are generally considered "when making a determination regarding the application of the judicial estoppel doctrine." *Brauser Real Estate, LLC v. Meecorp Capital Markets, LLC*, No. 06-CV-01816 SDW, 2012 WL 1079540, at *5 (D.N.J. Mar. 30, 2012) (Wigenton, J.). These are: (i) "the party in question must

have adopted irreconcilably inconsistent positions;" (ii) "the party must have adopted these positions in 'bad faith'"; and (iii) "there must be a showing that judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient." *Id.* These factors have undoubtedly been met.

First, Mr. Berrada has taken inconsistent positions. From July 2013 through March 2015, Mr. Berrada has averred and testified under oath to being unemployed and having no income. *See* SOF ¶¶189-200. Here, Mr. Berrada claims the exact opposite: that he became employed by PNY in or around September 2013 and was promoted in July 2014. *See* AC ¶¶15, 17, 22, 63, 67, 77, 83.

Second, Mr. Berrada has adopted these positions in bad faith. Mr. Berrada submitted affidavits and briefs representing that he was not only unemployed, but had *no income* whatsoever. It is only now, when "it is greatly to his benefit to alter that position," that he premises a number of his claims on being employed by PNY and/or not receiving all he was entitled from PNY. *Brauser Real Estate*, 2012 WL 1079540, at *7. This "shifting of positions in order to serve disparate economic positions epitomizes the 'fast and loose' conduct that the courts will not tolerate." *Levin v. Robinson, Wayne & La Sala*, 246 N.J. Super. 167, 181 (Law. Div. 1990) (sworn statements and briefs submitted to matrimonial court in connection with plaintiff's divorce proceeding judicially estopped him from arguing exact contrary position in subsequent action ).[8]

Finally, judicial estoppel would "address the harm and . . . no lesser sanction would be sufficient." *Brauser Real Estate*, 2012 WL 1079540, at *7. Mr. Berrada has admitted to testifying, under oath, that he was unemployed, his "income is zero," and he is "looking for a new job but [does]

---

[8] While *Levin* has been overruled in part, it relates only to its claim that "prior success" is not a prerequisite of judicial estoppel—an issue that does not apply here, since Mr. Berrada did, in fact, successfully assert that he was not receiving any income and was unemployed during the relevant time period. Moreover, the *Levin* court noted that cases following matrimonial actions are particularly likely to have estoppel issues. *See Levin*, 246 N.J. Super. at 181 ("The cases are legion in which a party was judicially estopped to advance a different litigation position from the position he took in his prior divorce action.").

not have any prospects" (points he continued to repeat thereafter). *See* Richter Decl. Exs. 73, 74; SOF ¶¶189-200. He now seeks to have *this* Court reward him not only damages, but liquidated damages, on the basis that he was an employee of PNY during that same time. Mr. Berrada thus would reap the benefit of any recovery and, in so doing, damage the integrity of the judicial process. And, of course, such recovery would also come at the expense of his former spouse and their children. *See Levin*, 246 N.J. Super. at 184 ("Failure to apply the doctrine would reward Levin at the expense of his ex-wife and destroy the integrity of the courts and judicial process."). In short, estopping Mr. Berrada from claiming he was an employee of PNY—and entering judgment in PNY's favor on any claims premised on such allegation—is "required to preserve the integrity of the earlier proceedings." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 325 (3d Cir. 2003).

Accordingly, this Court should find that Mr. Berrada is estopped from asserting (i) that he was employed by PNY; and (ii) that he has a right to any other income from PNY. Consequently, while Defendants firmly believe that Mr. Berrada's conduct in this regard warrants dismissal of all claims on this basis, at the least, those claims expressly premised on Mr. Berrada being an employee of PNY (Counts VIII, IX, X, and XI) should be dismissed and judgment entered in PNY's favor.

### ii.   Mr. Berrada is not covered by the FLSA or New Jersey labor laws.

Should the Court find that Mr. Berrada can assert that he was an employee of PNY for purposes of this action, he is still not entitled to recover under the FLSA, NJ Wage Payment Act, or NJ Wage Act as he was never an "employee" for purposes of those statutes. In fact, Mr. Berrada has conceded this point. *See* SOF ¶56. This Court should find so as well and enter judgment in Defendants' favor.

#### a.   Mr. Berrada does not qualify as an "employee" under the FLSA.

When determining if a worker is an "employee" for purposes of the FLSA, courts consider the following factors:

1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his

managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1386 (3d Cir. 1985). These factors, however, are not to be determinative; instead, "courts should examine the circumstances of the whole activity, and should consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." *Donovan*, 757 F.2d at 1382.

Here, the undisputed facts establish that Mr. Berrada was, at all times, an independent contractor. Mr. Berrada: (1) did not have set hours; (2) controlled his own time allocation; (3) was not supervised on a daily basis; (4) worked remotely from his home in Florida traveling to PNY's headquarters only on limited occasions; and (5) had autonomy to engage suppliers. *See* SOF ¶¶39-47, 146-47. Mr. Berrada was likewise engaged as a consultant because of his purported "special skills" in the world of accessories—specifically, Mr. Berrada claimed to have a special skill set in both managing, sourcing, and marketing accessories, and to have a unique and extensive network of contacts that would assist PNY. *See, e.g.*, AC ¶6; *see also* SOF ¶¶6, 26-27, 33-36.

Finally, Mr. Berrada was not brought in as a permanent employee or to assist with PNY's core business. Rather, the indisputable facts firmly establish his status as a consultant. Mr. Berrada: (1) never signed a restrictive covenant preventing his mobility or employability; (2) did not view his services to be exclusive to PNY; (3) was engaged on a month-to-month basis; (4) was engaged solely to launch new products (and not to expand PNY's core business); (5) was never placed on PNY's payroll; (6) received 1099s; and (7) did not receive employment benefits from PNY. *See* SOF ¶¶33-58, 192.

Finally, it is clear that the parties themselves intended Mr. Berrada to be a consultant.[9] The

---

[9] Indeed, the only testimony that could even plausibly support Mr. Berrada's claim that he was

November NDA signed by Mr. Berrada stipulates that he is providing "consulting services to represent PNY[.]" *Id.* ¶66. Indeed, Mr. Berrada even referred to himself during this time as a consultant. *Id.* ¶¶52, 69. It was only in July 2014 that PNY *offered* Mr. Berrada the opportunity to become an employee. *See id.* ¶¶88-94. In short, the plain facts of Mr. Berrada's relationship with PNY make clear that he was a consultant, and not an employee. For these reasons, Mr. Berrada is not covered by the FLSA and judgment should be entered in Defendants' favor on Count IX.

b.    Mr. Berrada is not covered by New Jersey's wage statutes.

The same result is warranted by the NJ Wage Payment Act and the NJ Wage Law. Under both statutes, courts look to the "ABC test." *See Hargrove v. Sleepy's, LLC*, 220 N.J. 289 (2015). The examination is whether:

(A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

*Philadelphia Newspapers, Inc. v. Bd. of Review*, 397 N.J. Super. 309, 319 (App. Div. 2007).

Under Prong A, "[s]ome factors indicative of control may include, but are not limited to, whether the worker is required to work any set hours or jobs, whether the enterprise has the right to control the details and the means by which the services are performed, and whether the services must be rendered personally." *Id.* at 321 (internal quotation marks omitted). Here, as just discussed above, PNY did not control the performance of Mr. Berrada's services.

The evidence also establishes that Prong B, known as the "course-of-business or location-of-work test," has been met. *See ABS Grp. Servs., Inc. v. Bd. of Review, Dep't of Labor*, No. A-1847-

---

employed by PNY is from Mr. Kam, who admitted that Mr. Berrada called and requested that he testify a certain way during his deposition regarding Mr. Berrada's status. *See* SOF ¶110.

12T3, 2014 WL 2780339, at *2 (N.J. Super. Ct. App. Div. June 20, 2014). As described, Mr. Berrada's services were not in connection with PNY's core business; instead, he was to provide services in connection with sourcing and marketing new products and product lines. It is also undisputed that Mr. Berrada was to perform "a significant amount of work" from Florida. Richter Decl. Ex. 20 at ¶13.

Finally, Prong C has also been met. "Prong (C) of the statute has been construed to mean that the 'trade, occupation, profession or business' of the [worker] 'was established independently of the employer or the rendering of the personal service forming the basis of the claim.'" *Philadelphia Newspapers*, 397 N.J. Super. at 323. Mr. Berrada ran his own business for years, *see* SOF ¶11, and after his position at Office Depot was terminated, went back to consulting. *See id.* ¶¶16-17. Since the Consulting Agreement has ended, Mr. Berrada has been in discussions with industry participants, and has been providing consulting services to at least one since 2016. *Id.* ¶¶186-88. Thus, it is clear that Mr. Berrada's consulting business "surviv[ed] the termination of [his] relationship" with PNY. *Philadelphia Newspapers*, 397 N.J. Super. at 323. Mr. Berrada's relationship with PNY satisfies the ABC Test. Judgment should be entered in Defendants' favor on Counts VIII and X.

c.  Alternatively, even if Mr. Berrada was an employee, he was fully compensated for his services by PNY.

The NJ Wage Payment Act creates "a private right of action for an employee. . .to collect wages wrongfully withheld." *Ramirez v. Gromitsaris*, No. CIV.A. 13-2371 JAP, 2013 WL 2455966, at *1 (D.N.J. June 3, 2013); *see Hargrove*, 220 N.J. at 302-03 (citing N.J.S.A. §34:11–4.7). As described above, *supra* at 8, Mr. Berrada has been fully compensated for his services; thus no wages have been "wrongfully withheld." Judgment should be entered in Defendants' favor on Count VIII.

d.  Alternatively, even if Mr. Berrada was an employee, he is exempt from the FLSA and the NJ Wage Act.

Finally, even assuming, *arguendo*, that Mr. Berrada was an employee of PNY, he would not qualify for protections under the FLSA or the NJ Wage Act. An individual who (like Mr. Berrada)

made more than $100,000 a year and "customarily and regularly perform[ed] any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee," is exempt from the FLSA and the NJ Wage Act as a "highly compensated employee." *See* 29 C.F.R. §541.601(a); *see also* N.J.A.C. §§12:56–7.1, –7.2(a) (incorporating the provisions of 29 C.F.R. §541). It is undisputed that Mr. Berrada was entitled to be compensated at a rate of $15,000 per month, or $180,000 a year. It is also undisputed that the services Mr. Berrada provided to PNY were those that qualify as the "exempt duties or responsibilities" of an executive or administrative professional.

In relevant part, the FLSA defines an "executive employee" as one "[w]ho customarily and regularly directs the work of two or more other employees." 29 C.F.R. §541.100(a)(3). Even if Mr. Berrada could somehow be considered an employee, it is undisputed that Mr. Berrada oversaw a team of four PNY employees. *See* SOF ¶79; AC ¶15. Alternatively, even if he were somehow deemed an employee, Mr. Berrada would qualify as "highly compensated" because his primary duties also match those of an "administrative employee." An individual qualifies as such if their primary duties include "the performance of office or non-manual work directly related to the management or general business operations of the employer," or "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §541.200(2), (3). Similar to the above, Mr. Berrada has alleged and testified repeatedly in this case that his responsibilities matched both of these duties. *Compare* SOF ¶¶44-47, 66-74, 76-82, 146-47 *and* AC ¶15 *to* 29 C.F.R. §§541.201(b), 202(a), 203.

Accordingly, assuming, *arguendo*, that Mr. Berrada was an employee of PNY, Mr. Berrada's "salary" of $180,000 a year, coupled with the clear fact that he performed many of the duties required to qualify as either an administrative or executive employee, undisputedly establish that he is highly compensated and not entitled to protections under the FLSA or NJ Wage Act (Counts IX and X).

### D.   Mr. Berrada Was Never A Sales Representative For PNY.

The NJ SRRA provides, in relevant part, that "the commissions and other compensation earned

as a result of the [sales] representative agreement and unpaid shall become due and payable within 30 days" of "[w]hen a contract between a principal and a sales representative to solicit sales is terminated[.]" N.J.S.A. §2A:61A–2. This claim has no relevance here.

After all, Mr. Berrada was never a sales representative of PNY, and he expressly *rejected* the opportunity to become one. *See* SOF ¶¶130-45. Nor did Mr. Berrada act as a "sales representative" for purposes of the NJ SRRA before the offer to become one was extended to him. A "sales representative" is defined as a "person, other than an employee, who contracts with a principal to solicit sales and who is compensated, in whole or in part, by commission[.]" N.J.S.A. §2A:61A–1(c). The undisputed facts establish, however, that Mr. Berrada never entered into a contract with PNY to "solicit sales." *See* SOF ¶¶82, 86. Indeed, Mr. Berrada has never even *alleged* that his relationship with PNY was one in which he would be soliciting sales. *See, e.g.*, AC ¶12. While Mr. Berrada worked *with* sales teams, he did not himself sell PNY's products. *See* SOF ¶86. Additionally, at no point was Mr. Berrada entitled to commissions for sales he may have made, or otherwise; instead, Mr. Berrada was entitled to monthly compensation of $15,000—all of which he received and acknowledged.[10] Thus, judgment should be entered on Defendants' behalf on Count XI.[11]

## II. JUDGMENT SHOULD BE ENTERED IN FAVOR OF DEFENDANTS ON THEIR COUNTERCLAIMS.

### A. Mr. Berrada Breached The Consulting Agreement.

The terms of the Consulting Agreement are simple: Mr. Berrada was supposed to source shredders, start and manage new product lines at PNY based upon his knowledge of the pertinent

---

[10] Moreover, Mr. Berrada's own allegations have failed to establish a right to "commissions." A commission does not include "percentage-based compensation derived from profits." *Brownstone Specialty Fin., Inc. v. Freedom Mortg. Corp.*, No. CV 16-5412 (NLH/AMD), 2017 WL 2829607, at *4 (D.N.J. June 30, 2017). Mr. Berrada's purported commissions are based on "worldwide gross sales" and "gross profit," *see* AC ¶12, and thus are clearly not "dependent upon" his work performance.

[11] Additionally, as this claim is clearly frivolous—Mr. Berrada is well aware he was not a sales representative and brought this claim regardless—Defendants are entitled to fees and costs. *See* N.J.S.A. §2A:61A–3.

supply chain and other expertise (thereby increasing sales), and bring in new customers. In return, PNY was to compensate Mr. Berrada $15,000 a month. PNY fulfilled their obligations under the Consulting Agreement and Mr. Berrada did not.

First, Mr. Berrada did not take the promised steps to source shredders at PNY: Mr. Berrada only contacted a single factory (with which he already had a relationship). *See* SOF ¶70. Second, Mr. Berrada failed to produce a single material, new supplier to PNY. *See id.* ¶¶84-85. Third, Mr. Berrada did not bring a single material new customer to PNY. *Id.* Most blatantly, however, is Mr. Berrada's failure to fulfill his obligations in managing the PowerPack initiative. Instead of increasing sales, Mr. Berrada's mismanagement (namely, his decision to introduce so many new product lines at once) resulted in excess inventory that PNY cannot sell or distribute. *See id.* ¶¶146-60. This, of course, is separate and apart from those PowerPacks that PNY had to sell at a deep discount ██████████ ████████████ *See id.* ¶158. Mr. Berrada's breaches of his obligations under the Consulting Agreement are clear. For these reasons, judgment should be entered on Count I.

**B.  Alternatively, Judgment Is Appropriately Entered Under Theories Of Promissory Estoppel Or Unjust Enrichment.**

If this Court finds that Mr. Berrada somehow did not breach the Consulting Agreement, the undisputed evidence establishes that judgment should still be entered on either Defendants' promissory estoppel (Count III) or unjust enrichment claims (Count IV).

**i.  Defendants suffered extensive damages in reliance on Mr. Berrada's false promises, and should recover under promissory estoppel in Count III.**

To recover under a theory of promissory estoppel, Defendants must establish: (i) a clear and definite promise by Mr. Berrada; (ii) that Mr. Berrada made the promise with the expectation that Defendants would rely on it; (iii) that Defendants did rely on the promise; and (iv) this reliance was to Defendants' detriment. *See Lobiondo v. O'Callaghan*, 357 N.J. Super. 488, 499 (App. Div. 2003). The undisputed evidence clearly establishes each of these elements. Mr. Berrada promised that, based on

his expertise and credentials, he could increase sales by tens of millions of dollars and bring in new customers. Mr. Berrada was well-aware that Defendants would rely on his promises and, in fact, did so. PNY gave Mr. Berrada the responsibility to start new products and product lines at PNY, provided him with a team of PNY employees to assist him, and allowed him to use his judgment to identify the products that he—in his expertise—thought were best. SOF ¶¶46-47, 146-47. Mr. Berrada failed miserably. *See id.* ¶¶73-74, 156-60. Thus, judgment should be entered on Count III to allow Defendants to recoup the damages (represented by their sunken inventory costs) incurred in reliance on Mr. Berrada's promises. *Pop's*, 307 N.J. Super. at 473.

### ii. Mr. Berrada's unjust enrichment is clear.

Likewise, and alternatively, the evidence clearly establishes Defendants' claim for unjust enrichment. Unjust enrichment requires proof that the counter-defendant "received a benefit and retention of that benefit without payment would be unjust," and that a counterclaimant "expected remuneration from the [counter-defendant] at the time it performed or conferred a benefit on [counter-defendant] and the failure of remuneration enriched [counter-defendant] beyond its contractual rights." *Iliadis v. Wal–Mart Stores, Inc.*, 191 N.J. 88, 110 (2007). Here, Mr. Berrada submitted invoices and accepted compensation in the amount of $15,000 a month without fulfilling his obligations to bring in new customers or suppliers, or to increase sales. Despite accepting this compensation, Mr. Berrada did not perform, making it markedly unjust for him to retain his full compensation, particularly when his conduct has led to PNY suffering hundreds of thousands of dollars of damages. Mr. Berrada should not be so enriched, and judgment should be entered on Count IV.

### C. Mr. Berrada's Performance Under The Consulting Agreement Violated The Implied Duty Of Good Faith And Fair Dealing and Judgment Should Be Entered On Count II.

"A covenant of good faith and fair dealing is implied in every contract in New Jersey." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). A party may not "do anything which will have the

26

effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). While the implied covenant cannot override a contract's express terms, "a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." *Wilson*, 168 N.J. at 244.

The undisputed evidence clearly establishes that Mr. Berrada, at all times, acted in bad faith in purporting to fulfill his contractual obligations. Defendants expected Mr. Berrada to bring in new products, new suppliers, and new customers based on his specific representations. The exact opposite proved to be true. For example, while Mr. Berrada promised that he could bring shredders to PNY to huge profits, *see* SOF ¶¶34-35, 64-65, Mr. Berrada's only attempt to start a shredder line was to meet with a single supplier with whom he already had a relationship. *See id.* ¶¶67-74. Moreover, Mr. Berrada made not a single good faith effort to contact or bring into PNY new material suppliers or customers for shredders or *any other* product lines. *Id.* ¶¶83-86. Not only that, but Mr. Berrada ostracized and alienated a number of PNY employees. *Id.* ¶¶125-28. Such conduct clearly destroyed Defendants' reasonable expectations and right to receive the fruits of the Consulting Agreement.

### D.    Mr. Berrada's Fraudulent Misrepresentations Induced Defendants To Enter Into The Consulting Agreement.

In New Jersey, fraudulent misrepresentation and fraudulent inducement require identical elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. CIV.A. 12-6590 SDW, 2013 WL 1431680, at *7 (D.N.J. Apr. 9, 2013); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011).

The scope and extent of the number of misrepresentations that Mr. Berrada made to Defendants in order to induce them to enter into the Consulting Agreement are vast and undisputable, warranting

judgment in PNY's favor on Count V. Even in this litigation, Mr. Berrada has continued to paint himself as having "years of specialized experience and expertise at high levels," an "extensive network of contacts and connections," and worked for "major employers." AC ¶¶5, 6. All of this proved to be gravely misrepresented and some outright false. As just some examples, Mr. Berrada:

- Failed to inform PNY that his positions at the prior "major employers" were "eliminated" and never informed PNY of the potentially troubling reasons why;
- Introduced only a single shredder supplier to PNY and failed to inform PNY that he did not even have direct contact with this supplier, but instead relied on a third-party;
- Failed to directly produce any material, new suppliers or customers to PNY; and
- Failed to deliver promised sales of $2.5 million and $10 million through the introduction of new products and product lines based on his extensive contact list (but instead saddled PNY with inventory valued at ▮▮▮▮▮▮▮▮▮▮▮).

*See* SOF ¶¶7, 9, 16, 25, 64-65, 70, 83-85, 91, 160. Put simply, PNY would *not* have engaged someone who was forced to leave his last three jobs and lacked any direct lines of communication with any new suppliers or customers. Mr. Berrada—unemployed for months with no real prospects of income— obviously intended for Defendants to rely on his representations. This reliance was indeed to Defendants' detriment; not only were Defendants induced into paying Mr. Berrada $15,000 a month plus expenses, but they have ▮▮▮▮▮▮▮▮▮▮▮ of inventory costs as damages and a nearly immeasurable amount of lost business opportunity costs and loss of goodwill. SOF ¶¶156-60.

It is also clear that punitive damages should be awarded here. Mr. Berrada acted wantonly and willfully in hiding his true level of experience from PNY. He promised them an expertise that would deliver great sales, knowing that was false and that his misrepresented experience would damage Defendants. *See, e.g.*, *Gennari v. Weichert Co. Realtors*, 288 N.J. Super. 504, 552-53 (App. Div. 1996).

### E.    Mr. Berrada's Negligent Misrepresentations Have Damaged Defendants.

To state a claim for negligent misrepresentation, "a [counterclaimant] must prove that the [counter-defendant] negligently made an incorrect statement, upon which the [counterclaimant] justifiably relied." *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 457 (D.N.J. 2015). "As with any negligence-based claim, the defendant must owe a duty of disclosure to the plaintiff." *Prudential Ins.*,

2013 WL 1431680, at *9. "The guiding principle for the imposition of liability is fairness to both the party making the representation and to the party aggrieved by its dissemination." *Id.*; *see also Highlands Ins. Co. v. Hobbs Grp., LLC.*, 373 F.3d 347, 355 (3d Cir. 2004).

Here, Mr. Berrada clearly owed a duty of disclosure to Defendants. Mr. Berrada was in exclusive control over the information he shared with Defendants, including the scope and level of his purported expertise and contacts. Mr. Berrada knew that the representations and assurances he would make would be relied on by Defendants, particularly as it related to products and product lines that were outside of PNY's core business. *See, e.g.*, *Prudential Ins.*, 2013 WL 1431680, at *9. The remaining elements of a negligent misrepresentation claim are substantially similar to Defendants' intentional misrepresentation claim. *See id.* Thus, for the reasons discussed *supra* at 27-28, this Court should find that the undisputed facts establish that Mr. Berrada committed negligent misrepresentation.

**F.    By Misappropriating PNY Emails, Mr. Berrada Violated The NJTSA.**

The NJTSA "prohibits the actual or threatened misappropriation of a trade secret." *StrikeForce Techs., Inc. v. WhiteSky, Inc.*, No. CIV.A. 13-1895 SRC, 2013 WL 3508835, at *8 (D.N.J. July 11, 2013) (citing N.J.S.A. §56:15–3). Mr. Berrada's misappropriation of PNY's trade secrets is clear, undisputed, and warrants judgment on Count VII.

First, the information that Mr. Berrada misappropriated clearly constituted "trade secrets." A trade secret is broadly defined as information that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.J.S.A. §56:15–2.

PNY operates in a highly competitive industry. The continued viability of PNY's business depends on keeping all of its competitive business information confidential. Notably, Mr. Berrada has acknowledged the confidential nature of the information he was privy to. SOF ¶¶170-71. PNY has

taken great steps to keep this information confidential, including: (i) significantly restricting access to its financial information, (ii) requiring the signing of NDAs, and (iii) including a warning in emails sent from PNY email addresses alerting the recipient (and the sender) that the email contains confidential information, the review and distribution of which is prohibited. *Id.* ¶¶29-32, 61-62, 66, 87.

Second, there can be no doubt that Mr. Berrada misappropriated PNY's trade secrets. For relevant purposes, the NJTSA defines "misappropriation" as the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or the "[d]isclosure. . .of a trade secret of another without express or implied consent of the trade secret owner by a person who. . .used improper means to acquire knowledge of the trade secret[.]" N.J.S.A. §56:15–2. A person uses "improper means" through the "breach or inducement of a breach of an express or implied duty to maintain the secrecy of, or to limit the use or disclosure of, a trade secret." *Id.* Mr. Berrada knew he acquired these trade secrets (and kept them) by improper means, specifically in breach of the NDAs he had signed (*see infra* at 33-34).[12] It also, alternatively, bucks reason to think Mr. Berrada has not used or disclosed these trade secrets. Mr. Berrada continues to seek employment or consulting opportunities within the same industry. He has admitted to having conversations to discuss potential ideas with customers of PNY, and is providing consulting services to a potential competitor. *See* SOF ¶¶186-88. To claim that Mr. Berrada is not or has not used the trade secrets he took from PNY is wholly suspect. *See NVR, Inc. v. Davern*, No. 15-5059 (NLH/KMW), 2015 WL 9450831, at *2 (D.N.J. Dec. 23, 2015) (entering temporary restraining order where "[t]he evidence supports the conclusion that [defendant] obtained this information with the intent of benefiting himself financially and harming NVR commercial interests in favor of his new employer").

---

[12] Such conduct is also in breach of the implied duty to not take or utilize such confidential information after a business relationship has ended. *See, e.g., Singer v. A. Hollander & Son*, 202 F.2d 55, 59 (3d Cir. 1953); *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 298–99, 305 (2001).

Defendants have been unable to prove the full extent to which Mr. Berrada has used or disclosed PNY's trade secrets because Mr. Berrada has disposed of or destroyed the personal cellphone and laptop he used until late November 2016, and never returned his PNY-issued laptop to PNY. *See* SOF ¶¶176-84. Defendants should not, however, be penalized in the face of such blatant self-serving misappropriation.[13] Judgment should be entered on Count VII.[14]

### G.   By Taking And Keeping PNY Emails, And Inappropriately Accessing PNY's Servers, Mr. Berrada Has Violated The CFAA.

The CFAA makes it unlawful for any individual to do what Mr. Berrada undisputedly did here: to "intentionally access[] a computer without authorization or [to] exceed[] authorized access, and thereby obtain[] . . . information from any protected computer." 18 U.S.C. §1030(a)(2)(C). The CFAA defines "exceeds authorized access" as follows: "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled to so obtain or alter." 18 U.S.C. §1030(g). To maintain a civil action, a party must establish, among other factors, that the unlawful computer access caused "a loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. §1030(c)(4)(A)(i)(I). All of these elements are met.

Mr. Berrada has both intentionally accessed PNY's computer system without authorization and accessed PNY's computer system in a way that exceeded his authorized access. First, after the Consulting Agreement ended, and Mr. Berrada's authorized access to the PNY system concluded, Mr. Berrada accessed PNY's system to forward emails containing confidential PNY information to his own personal email address. *See* SOF ¶163. He also continued to access PNY's servers in other ways. For example, Mr. Berrada used as an exhibit during depositions a February 5, 2015 email from his

---

[13] Thus, should the Court deny Defendants' motion for summary judgment as to their Counterclaims, Defendants respectfully request leave to file a motion for an adverse inference.
[14] Due to the willful nature of Mr. Berrada's misappropriation, punitive damages, fees, and costs should be awarded to Defendants. N.J.S.A. §56:15–4(b); *id.* §56:15–6(a).

PNY account. While Mr. Berrada claimed he produced this email on a USB drive during discovery, this email was undisputedly not part of this production, as no email in that production is post-dated *November 11, 2014. See id.* ¶¶168, 172. Thus, it cannot be disputed that Mr. Berrada continued to access PNY's servers long after his relationship with PNY ended.

Not only that, but Mr. Berrada clearly exceeded his authorized access to PNY's servers. As the November NDA makes clear, Mr. Berrada was given access to PNY's servers to provide "consulting services to represent PNY to suppliers and gain product sourcing information, obtain samples, and information to help make decisions regarding future product offerings, [and] [o]ffer suggestions regarding team management." *See* SOF ¶66; *see also* Richter Decl. Ex. 30. He explicitly agreed to not "cop[y], distribute[] or disseminate[] in any way or form" the confidential information he received from PNY, and to not use the confidential information "for any purpose, except as expressly stated" in the NDA. *See* Richter Decl. Ex. 30. By downloading and keeping *all* of his PNY emails, Mr. Berrada clearly exceeded his authorized access to PNY's servers. *See, e.g.*, *United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010) ("Access to a computer and data that can be obtained from that access may be exceeded if the purposes for which access has been given are exceeded."); *see United States v. Rodriguez*, 628 F.3d 1258, 1263 (11th Cir. 2010); *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 581-84 (1st Cir. 2001); *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006).[15]

Finally, Defendants have suffered losses exceeding $5,000—although the full extent of their losses cannot be determined due to Mr. Berrada's spoliation.[16] The CFAA defines "loss" to include

---

[15] There is a current Circuit split regarding what "exceeding authorized access" means. The Third Circuit has yet to address this split. *See, e.g.*, *Chubb Ina Holdings Inc. v. Chang*, No. CV 16-2354-BRM-DEA, 2017 WL 499682, at *6 (D.N.J. Feb. 7, 2017). The split is irrelevant here because Mr. Berrada exceeded his authority to access PNY's email server when he stole thousands of PNY emails containing confidential information. *See Reyeros v. United States*, No. CIV.A. 10-2907 SDW, 2011 WL 5080308, at *11 (D.N.J. Oct. 24, 2011) (Wigenton, J.) (CFAA conviction upheld where agent exceeded access granted in documented restrictions).

[16] Due to Mr. Berrada's spoliation, *see supra* at 7, Defendants have been unable to determine the full extent by which they have been threatened by a loss of business expectancies, good will, customers,

"any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. §1030(e)(11); *Grant Mfg. & Alloying, Inc. v. McIlvain*, 499 F. App'x 157, 159 (3d Cir. 2012). Here, Defendants have suffered more than $5,000 in costs analyzing and investigating Mr. Berrada's unauthorized access to its computer servers to assess the damage that had been caused or the extent of his transfer of confidential information. SOF ¶¶185; *see Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1074 (6th Cir. 2014) (investigation and damage assessment of company included in "loss"); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009) (same). Judgment should be entered on Count VIII.

### H. By Taking PNY's Emails, Mr. Berrada's Is Liable Under The NJCROA.

The NJCROA makes it unlawful to alter, damage, access, or obtain data from a computer without authorization. It permits "[a] person or enterprise damaged in business or property" to sue for compensatory and punitive damages, as well as fees and costs. N.J.S.A. §2A:38A–3. Courts have interpreted the NJCROA "in harmony with its federal counterpart," the CFAA. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). Thus, for the reasons just discussed, judgment should be entered in favor of Defendants on Count IV, and, due to Mr. Berrada's willful conduct, punitive damages, fees, and costs should be awarded.

### I. Mr. Berrada Has Clearly Breached The NDA.

Defendants assert a claim for breach of contract based on Mr. Berrada's violation of the November NDA. The NDA, after all, states that confidential information "shall . . . not be copied, distributed or disseminated in any way or form by Recipient without the prior written consent of the

---

and trade secrets. Mr. Berrada has, at the least, testified that he has had discussions with competitors and customers of PNY, is currently providing consulting services for another company, and is still considering starting a shredder line elsewhere.  SOF ¶¶186-88.

disclosure," and "shall . . . not be used by Recipient for any purpose . . . without the prior written consent of the Disclosure[.]" Richter Decl Ex. 30. By downloading and keeping nearly 19,000 PNY emails that Mr. Berrada has admitted contain "Confidential Information," Mr. Berrada has clearly breached the NDA.[17] SOF ¶¶164-71. Thus, judgment should be entered on Count X.

### J.    Mr. Berrada Has Converted Defendants' Emails.

Conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Barco Auto Leasing Corp. v. Holt*, 228 N.J. Super. 77, 83 (App. Div. 1988). Mr. Berrada has admitted that he downloaded and kept PNY emails (and attachments) after the time when his consulting relationship with PNY ended.[18] Moreover, discovery has established that Mr. Berrada either kept and/or destroyed his PNY-issued laptop. PNY has never received this laptop back—and thus have been prevented from determining the damage caused to it by Mr. Berrada's wrongful taking of PNY emails and documents.[19] Such conduct warrants the award of punitive damages. For these reasons, judgment should be entered on Count XI.

### CONCLUSION

For all these reasons, judgment should be entered in Defendants' favor on all of Mr. Berrada's claims, as well as their own Counterclaims.

---

[17] While Defendants cannot be aware of all the damage caused by Mr. Berrada's breach (due to Mr. Berrada's spoliation), they are still entitled to (at the least) nominal damages for his breach. *Webster v. Rutgers-New Jersey Med. Sch.*, No. CV 15-08689, 2017 WL 3399997, at *11 (D.N.J. Aug. 4, 2017).
[18] To the extent the emails and/or documents are found to be intangible, "[a] common-law cause of action of conversion applies to intangible electronic records that are stored on a computer and are indistinguishable from printed documents." 90 C.J.S. Trover and Conversion §14; *see Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292–93 (2007) (electronic records subject to conversion).
[19] New Jersey courts permit conversion claims for nominal damages and even punitive damages in the absence of compensatory damages. *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. CIV.A. 11-2658 JBS, 2014 WL 4755487, at *8 (D.N.J. Sept. 24, 2014).

WINSTON & STRAWN LLP

*Attorneys for Defendants Gadi Cohen and PNY Technologies, Inc.*

Dated: March 20, 2018                    By:    s/ James S. Richter   
                                   James S. Richter
                                   jrichter@winston.com

**OF COUNSEL:**
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that copies of Defendants' Motion for Summary Judgment, Local Civil Rule 56.1 Statement of Material Facts Not in Dispute, Declaration of James S. Richter in Support of Defendants' Motion for Summary Judgment, all exhibits attached thereto, and all other supporting papers were served upon all counsel by ECF and Electronic Mail.


<u>s/ James S. Richter</u>
James S. Richter

Dated: March 20, 2017

36